Argued January 9, 1978, affirmed January 16, 1979

# GRUBER, *Appellant,*
## *v.*
# LINCOLN HOSPITAL DISTRICT, et al,
## *Respondents.*
## (TC 36363, SC 25339)
### 588 P2d 1281

Thomas B. Brand of Brand, Lee, Ferris & Embick, Salem, argued the cause for appellant. With him on the brief was Matthew Gruber pro se.

Paul B. Osterlund, Toledo, argued the cause for respondents. With him on the brief was George W. Henderson.

LINDE, J.

**LINDE, J.**

The Lincoln Health District, named in the complaint as the Lincoln Hospital District, is a municipal corporation organized pursuant to ORS 440.305 - 440.410 for the purpose of providing facilities for the care of sick and injured persons. Plaintiff filed suit to invalidate a contract the district allegedly had entered into with a physician. The trial court sustained a demurrer to the first amended complaint on a number of grounds, including failure to join the physician as a party. Plaintiff then filed a second amended complaint identical to the first except for the addition of the doctor as a defendant. On defendants' motion, the trial court struck this complaint in its entirety, and plaintiff appeals.

Although technically the order striking the complaint rested on the different premise that the complaint contained no new matter, *see Bliss v. Southern Pacific Co.,* 212 Or 634, 653, 321 P2d 324 (1958), defendants have waived any objection to considering the appeal as being from the decision sustaining the demurrer to the first amended complaint.

In that demurrer, defendant Health District challenged the complaint on the ground, among others, that plaintiff had not alleged any substantial interest in a justiciable controversy. If the trial court's ruling in favor of defendant on this issue was correct, the judgment must be affirmed without reaching the other issues in dispute.

The complaint contained the following relevant allegations: Plaintiff is a "resident and inhabitant" and a "taxpayer" residing within the boundaries of the district. Under a "service agreement" entered into by the district and defendant Dr. Bond, the district agreed to provide office space, equipment, and supporting staff for Dr. Bond, and the doctor agreed to perform managerial and medical services on behalf of the district. The district was to bill and collect charges

for the doctor's professional services and pay over to him each month 50% of the first $3,000 of the gross billings for the previous month, 60% of the next $3,000, and 70% of any additional amounts, retaining for itself the corresponding 50%, 40%, and 30% remainders of the gross billings "as compensation to District for providing to Doctor the facility, equipment, supplies, services and personnel."

The complaint attacked the legality of this arrangement on three grounds: First, that it violated a rule of professional ethics of the American Medical Association said to have been adopted by the district's staff and approved by the district's board of directors, second, that it placed the district in the role of collection agency without the license required by ORS 697.010 et seq., and third, that it put the district in the position of financing a private enterprise in violation of article XI, section 9, of the Oregon Constitution.[1] The prayer was for a declaration that the contract was "illegal, invalid, and void," ordering defendant not to carry out the terms of the contract, and allowing such other relief as the court might deem proper.

The present action is brought under the Uniform Declaratory Judgments Act, ORS chapter 28. ORS 28.020 provides:

> Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

---

[1] Article XI, section 9, provides in part:

No county, city, town or other municipal corporation ...shall .. . raise money for, or loan its credit to, or in aid of, any such company, corporation or association.

[6]

Thus a complaint under this section must show how plaintiff's "rights, status, or other legal relations are affected" by an instrument or enactment, the construction or validity of which he seeks to have determined. Standing under this section has been denied when the showing of the required effect has been too speculative or entirely missing. *See, e.g., Gortmaker v. Seaton*, 252 Or 440, 443, 450 P2d 547 (1969); *Eacret v. Holmes*, 215 Or 121, 125, 333 P2d 741 (1958); *Hale v. Fireman's Fund Ins. Co.*, 209 Or 99, 103-104, 302 P2d 1010 (1956). Though the present complaint described plaintiff as a "resident and inhabitant of that area encompassed by the geographical limits" of the district and as a "taxpayer residing within said Lincoln Hospital district," nothing further is said that bears on a person's rights, status, or other legal relations consequent upon residency within the territory of the district. We do not say that there may not be such consequences of residency that might support a person's standing to seek judicial review of some action of the district, but neither plaintiff's complaint nor his brief refers to them. Rather, plaintiff places his reliance on his right as a taxpayer to challenge the misuse of public funds.

■ "Taxpayer" status has its own logical problems. As a basis for standing to demand non-financial remedies against alleged maladministration, it may be only a fig leaf for the kind of "public action" defended by Professor Louis Jaffe. See Bittker, *The Case of the Fictitious Taxpayer: The Federal Taxpayer's Suit Twenty Years After Flast v. Cohen*, 36 U Chi L Rev 364 (1969);[2] Jaffe, *Judicial Control of Administrative Action* 459-500 (1965). Nevertheless, in contrast with a

---

[2] In an imaginary opinion, Professor Bittker identified, among other species, the "accidental taxpayer" (a casual visitor who pays an indirect tax, for instance a hotel room tax), the "dormant taxpayer" (a one-time taxpayer whose taxable wealth or income have temporarily fallen below the minimum for actual taxation), the "incipient taxpayer" (who expects to be taxed in the future though he presently is not), and the "indirect taxpayer" (who, though himself exempt, must pay higher prices by virtue of the tax burden on those with whom he deals).

"public" mandamus action brought by a public law officer to enforce a "public right" on the relation of a private person, *see State v. Ware,* 13 Or 380, 10 P 885 (1886); *Putnam v. Norblad,* 134 Or 433, 293 P 940 (1930); *but cf. Vinton v. Hoskins,* 174 Or 106, 109, 147 P2d 892 (1944), a taxpayer's standing as such to demand equitable relief in his own name in Oregon has depended on allegations that the challenged governmental action had actual or potential adverse fiscal consequences. *See Carman v. Woodruff,* 10 Or 133 (1882); *McKinney v. Watson,* 74 Or 220, 145 P 266 (1915); *Hanson v. Mosser,* 247 Or 1, 10-12, 427 P2d 97 (1967). When a suit under ORS 28.020 is grounded on "taxpayer" standing, these fiscal consequences presumably represent the effect on plaintiff required by that statute.

■ The present complaint contains no such allegations. It is true that health districts are empowered to levy a property tax. ORS 440.395. However, we are not told whether the district does so or how the alleged contract may affect such taxes. There is no allegation that the challenged agreement involves the expenditure of tax funds. The only provision of the contract that appears

A note reviewing taxpayers' suits throughout the states concluded:

The ultimate basis for granting standing to taxpayers must therefore be sought outside the normal language of the courts. Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement. Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts.

. . . .

In practice, therefore, the word "taxpayer" has been defined in such a manner that any person with adequate resources or backing is able to use that form of suit. Thus, "taxpayers' suits" have functionally become "citizens' suits."

Note, *Taxpayers' Suits: A Survey and Summary,* 69 Yale L Rev 895, 904, 906 (1960). In view of the present state of the law under ORS 28.020 and equitable doctrines (as well as ORS 34.020 and 34.130), however, formulation of coherent rules of standing to pursue various remedies against alleged governmental maladministration must await a systematic reexamination of the statutory framework of judicial review.

[8]

to relate to the financial interests of the district expressly states that its terms are designed to protect the district against loss. When the potential fiscal implications of a public contract are not apparent on its face, they should not be left to judicial speculation; they need to be asserted, if a plaintiff relies on his interest as a taxpayer rather than some other "rights, status, or other legal relations" to proceed under ORS 28.020. As stated above, we do not say that plaintiff might not have another interest in the operations of the Lincoln Health District, but none has been argued to us. Nor has he alleged facts from which the trial court could discern a potential effect on plaintiff as a taxpayer. In the absence of such allegations, the court did not err in sustaining the demurrer.

Affirmed.