Argued and submitted March 5, judgment of the Tax Court affirmed August 5, 1993

Mary Diane SAVAGE,
David H. Craig, Earl D. McGinty, Judy McGinty,
Richard D. Smith, and Lawrence F. Lear,
*Appellants,*

*v.*

Richard A. MUNN,
Director, Department of Revenue,
and the Department of Revenue,
State of Oregon,
*Respondents,*

Don McINTIRE
and Thomas P. Dennehy,
*Intervenors,*

Henry KANE,
*Intervenor.*

(OTC 3075; SC S39254)

856 P2d 298

Duane A. Bosworth, of Davis, Wright, Tremaine, Portland, argued the cause and filed the briefs for appellants.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Henry Kane, intervenor, Beaverton, argued the cause and filed a brief *in propria persona*.

Gregory W. Byrne, of Byrne, Barrow & Smith, Portland, filed a brief for intervenors McIntire and Dennehy.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiffs appeal a decision of the Oregon Tax Court holding that Article XI, section 11b(4), of the Oregon Constitution does not violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.[1] *Savage v. Munn*, 12 OTR 145 (1992). For the reasons that follow, we affirm the judgment of the Tax Court.

In 1990, Oregon voters adopted an initiative measure (Measure 5) that amended the Oregon Constitution by adding Article XI, section 11b. Subsection (1) of that constitutional provision limits the total amount of property taxes that can be imposed for public schools and government operations other than schools:

"During and after the fiscal year 1991-92, taxes imposed upon any property shall be separated into two categories: One which dedicates revenues raised specifically to fund the public school system and one which dedicates revenues raised to fund government operations other than the public school system. The taxes in each category shall be limited as set forth in the table which follows and these limits shall apply whether the taxes imposed on property are calculated on the basis of the value of that property or on some other basis:

"MAXIMUM ALLOWABLE TAXES
For Each $1000.00 of
Property's Real Market Value

| "Fiscal Year | School System | Other than Schools |
|---|---|---|
| "1991-1992 | $15.00 | $10.00 |
| 1992-1993 | $12.50 | $10.00 |
| 1993-1994 | $10.00 | $10.00 |
| 1994-1995 | $ 7.50 | $10.00 |
| 1995-1996 | $ 5.00 | $10.00 |
| and thereafter" | | |

Measure 5 recognized that some adjustment would have to be made for properties subject to the tax levies of

---

[1] The Equal Protection Clause of the Fourteenth Amendment provides in part: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Plaintiffs make no state constitutional claim or argument.

multiple taxing units; Article XI, section 11b(4), provides in part:

> "(4)   In the event that taxes authorized by any provision of this Constitution to be imposed upon any property should exceed the limitation imposed on either category of taxing units defined in subsection (1) of this section, then, notwithstanding any other provision of this Constitution, the taxes imposed upon such property by the taxing units in that category shall be reduced evenly by the percentage necessary to meet the limitation for that category. The percentages used to reduce the taxes imposed shall be calculated separately for each category and may vary from property to property within the same taxing unit. The limitation imposed by this section shall not affect the tax base of a taxing unit."

*See Savage v. Munn, supra,* 12 OTR at 151-52 (explaining the effect of Article XI, section 11(b)(4)).

Plaintiffs sought a declaratory judgment in the Tax Court that Article XI, section 11b(4), violates the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs alleged in their complaint that they are property taxpayers in various Oregon counties and that, due to Measure 5, the amount of their property taxes going to various taxing authorities differs from the amount of other taxpayers' taxes in the same counties going to the same taxing authorities, even though the taxed properties have the same assessed value. Plaintiffs alleged further that they will be adversely affected by Measure 5, because they will pay more to some taxing authorities than other taxpayers with similarly assessed properties in the same jurisdictions. Plaintiffs and defendants[2] both moved for summary judgment.

Plaintiffs argued that the federal Equal Protection Clause requires *uniform* taxation. Plaintiffs posited several hypothetical situations in which, under Measure 5, owners of properties in the same county with identically assessed values would pay different amounts of taxes to the same taxing

---

[2] The Department of Revenue, as well as the Director of that department, are named defendants. Intervenors include Don McIntire and Thomas P. Dennehy, sponsors of Measure 5, and Henry Kane, a property owner and taxpayer. Those parties will be referred to collectively as "defendants."

unit.[3] Plaintiffs concluded that the shifting of responsibility for supporting county government that could result from a vote entirely inside a city, with the rest of the county voters/property taxpayers not participating, violates their Fourteenth Amendment right to equal protection of the law. The issue, then, is: Does Article XI, section 11b(4), violate the federal Equal Protection Clause?

In their motion for summary judgment, plaintiffs relied primarily on Oregon case law involving the "uniformity" provision of the Oregon Constitution. Those cases, in turn, relied on federal equal protection analysis, requiring that tax laws providing for disparate results have a "rational basis." *See, e.g., Huckaba v. Johnson*, 281 Or 23, 26, 573 P2d 305 (1978) (in assessing constitutional challenge, court determines if tax classification rests on a rational basis).[4] Plaintiffs argued that Measure 5 lacks the requisite rational basis. Defendants argued that federal equal protection analysis does not require "uniformity" and that Measure 5 satisfies the federal "rational basis" test.

The Tax Court reasoned that, in cases involving laws that deal with economic matters, state laws will be upheld "as long as they are 'rationally related to furthering a legitimate state interest.' " 12 OTR at 154 (quoting *Vance v. Bradley*, 440 US 93, 97, 99 S Ct 939, 59 L Ed 2d 171 (1979) (citations and footnote omitted). Applying a rational basis test, the court concluded that the classification involved here has a

---

[3] We paraphrase one such hypothetical situation:

Voters in a city (a taxing authority) are also voters in a county (another taxing authority). The city voters/property taxpayers, being subject to both taxing authorities, already have reached the Measure 5 "cap" of $10 non-school tax per $1,000 of assessed value. The city voters vote a substantially higher tax base for the city. The voters in the rest of the county, not being eligible to vote in the city, cannot vote on that proposal. However, by increasing its tax base, the city effectively has captured a larger portion of the limited tax dollars available under Measure 5, without increasing the actual dollar amount that any properties will be taxed. The city's property taxes will be prorated under Measure 5, having reached the cap; the amount paid in taxes to the county on these properties will be less than that paid on property of identically assessed value within the county but outside the city.

That scenario is typical of the hypothetical situations posited by plaintiffs.

[4] *See Allied Stores v. Bowers*, 358 US 522, 527, 79 S Ct 437, 3 L Ed 2d 480 (1959) ("The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary"); *see also* Glennon, *Taxation and Equal Protection*, 58 Geo Wash L Rev 261, 281-82 (1990).

rational relationship to the objective of Article XI, section 11b, in that it directly accomplishes the measure's objective of limiting the taxes that can be imposed:

> "The legislative body, in this case the people, has determined that taxes in excess of $25 per $1,000 of assessed value for the year 1991-1992 are detrimental and should not be allowed. To limit taxes, it has chosen to reduce each taxing unit's levy by a proportionate amount in each case where the levies would otherwise exceed the limit. It is true this limitation could have been accomplished by other means. The people could have limited the amount of assessed value subject to taxation or provided for equalization throughout the entire state. However, such alternatives are irrelevant." 12 OTR at 157 (footnote omitted).

In this court, plaintiffs argue for the first time that their federal equal protection claim must be subjected to "strict scrutiny," because Measure 5's proration scheme burdens their "fundamental right to vote," arguing from their hypothetical situation set forth above. *See* note 3, *supra.* Defendants respond that strict scrutiny is not required, because plaintiffs did not allege a denial of their voting rights in their complaint or on summary judgment. Defendants argue further that, under these circumstances, it is appropriate to apply a "rational basis" test. Defendants also argue that, because plaintiffs have not demonstrated any actual injury but instead have argued only abstract and hypothetical injuries, they lack standing or have failed to plead a justiciable issue.

■  We first consider whether plaintiffs have properly asserted a claim that their fundamental right to vote has been burdened. In their complaint, plaintiffs identified themselves only as property taxpayers. Numerous cases have discussed the criteria for standing as a taxpayer when challenging tax law. *See, e.g., Gruber v. Lincoln Hospital District*, 285 Or 3, 8, 588 P2d 1281 (1979) ("a taxpayer's standing * * * has depended on allegations that the challenged governmental action had actual or potential adverse fiscal consequences"). If we were to accept plaintiffs' additional description of themselves on appeal as citizens whose fundamental right to vote has been burdened, we would examine that contention separately. However, for the following reasons, we reject plaintiffs' additional description of themselves.

The first suggestion in this case that there is any claim relating to voting rights is found in plaintiffs' brief on summary judgment. There, plaintiffs state that plaintiff Lawrence Lear lives in Gilliam County, which contains School District 25J. That school district has increased its tax base, thereby increasing its share of the limited school revenue available under Measure 5 and decreasing the revenue available to the Gilliam County Educational Service District (GCESD) — a variation on the hypothetical case set forth above. *See* note 3, *supra.*

An examination of the exhibits attached to plaintiffs' motion for summary judgment, however, shows no burden on Lear's voting rights. Plaintiffs' exhibits include a chart comparing Gilliam County properties in Tax Code Areas 1 and 7, demonstrating that owners of properties in Area 7 pay proportionally more of the revenue that goes to the GCESD than do owners of properties in Area 1, who are within School District 25J. However, looking at the affidavit and Lear's attached tax statement, we note that his property is in Tax Code Area 10 and that his property tax includes payment to School District 25J, which district appears to have *increased* its tax base at the expense of the GCESD, according to plaintiffs' chart comparing Areas 1 and 7.[5] Assuming, then, that Lear is a voter, we also must assume that he had an opportunity to vote on the school tax levy for district 25J.

Based on the data that plaintiffs have provided, we are unable to conclude that Lear's fundamental right to vote has been affected in the manner that plaintiffs now assert. Moreover, there is no evidence in the record to support a conclusion that any other plaintiff has suffered any burden on voting rights. We conclude, therefore, that plaintiffs are properly classified only as property taxpayers who claim that they have been affected adversely by Measure 5. The Tax Court correctly determined that the question to be answered in this case is whether there is a rational relationship between

---

[5] Plaintiffs also have included information on another school levy within Gilliam County, arguing that the Arlington School District has increased its tax base, thereby decreasing the amount of revenue going to the Gilliam County Educational Service District. The data provided indicates that the Arlington School District passed a levy of "$539,891 *outside* its tax base." (Emphasis added.) The data does not indicate what effect this may have had on revenue going to the county's educational service district, or how any of the individual plaintiffs may have been affected.

the classification made by Measure 5 and a legitimate state objective.

We next turn to the issue whether plaintiffs have standing as property taxpayers to bring the present action. Defendants argue that plaintiffs lack standing as property taxpayers. The Tax Court disagreed. *Savage v. Munn, supra,* 12 OTR at 147 n 1.

ORS 28.020 makes the following provisions for declaratory relief:

> "Any person * * * whose rights, status or other legal relations are affected by a constitution * * * may have determined any question of construction or validity arising under any such * * * constitution * * * and obtain a declaration of rights, status or other legal relations thereunder."

This court has stated:

> "[A] taxpayer's standing as such to demand equitable relief in his own name in Oregon has depended on allegations that the challenged governmental action had actual or potential adverse fiscal consequences. When a suit under ORS 28.020 is grounded on 'taxpayer' standing, these fiscal consequences presumably represent the effect on plaintiff required by that statute." *Gruber v. Lincoln Hospital District, supra,* 285 Or at 8 (citations omitted).

Plaintiffs have alleged that their rights are affected by Measure 5, a constitutional provision. They have alleged that Measure 5 will have the effect of making them pay proportionally more for the same (or fewer) services; they have not alleged that Measure 5 will have the "fiscal consequence" of raising their taxes. However, a direct effect on the amount of one's tax bill is not required to show taxpayer standing. We agree with the Tax Court that plaintiffs sufficiently have alleged fiscal consequences that affect them and, therefore, have standing to seek relief under ORS 28.020.

Defendants also argue that plaintiffs' claim is not justiciable. The Tax Court disagreed. *Savage v. Munn, supra,* 12 OTR at 147 n 1. This court has held that, in order to obtain declaratory relief under the provisions of the Uniform Declaratory Judgment Act, ORS 28.010 *et seq,* the complaint must present a justiciable controversy:

> "A controversy is justiciable, as opposed to abstract, where there is an actual and substantial controversy between

parties having adverse legal interests. The controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue. A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion which is binding on no one. The court cannot exercise jurisdiction over a nonjusticiable controversy because in the absence of constitutional authority, the court cannot render advisory opinions." *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982) (citing *Oregon Cty. Mfgs. Ass'n v. White*, 159 Or 99, 109, 78 P2d 572 (1938)).

Plaintiffs here are complaining of the manner in which their taxes are capped under Measure 5. The workings of Measure 5 are "present facts," not simply possible future events.[6] A binding decree would have the effect of invalidating the proportional reduction scheme contained in Article XI, section 11b(4). Such an outcome would hardly be an advisory opinion. We agree with the Tax Court that this controversy is justiciable. We now turn to the central issue, whether Article XI, section 11b(4), violates the Equal Protection Clause of the Fourteenth Amendment.

5.     After the Tax Court issued its opinion in this case, the Supreme Court of the United States upheld Article XIIIA of the California State Constitution (Proposition 13) against a federal equal protection challenge. *Nordlinger v. Hahn*, 505 US ___, 112 S Ct 2326, 120 L Ed 2d 1 (1992).[7] Like Measure 5, Proposition 13 is a property tax limitation scheme that amends a state constitution.[8] Under Proposition 13, which took effect in 1978, California real property taxes are capped at 1 percent of "full cash value," which is defined as either

---

[6] Although the record is not clear, it appears that, at least as to Lear, Measure 5 has had some cognizable effect. Accordingly, we will consider that the issue of Measure 5's constitutionality is justiciable.

[7] *See also Amador Valley Joint Union High School Dist. v. Bd. of Education*, 22 Cal 3rd 208, 149 Cal Rptr 239, 583 P2d 1281, 1292-95 (1978) (the Supreme Court of California upheld Proposition 13's validity against a federal equal protection assault).

[8] *See Nordlinger v. Hahn, supra*, 120 L Ed 2d at 9-10 (explaining text of Proposition 13 and its effect on taxation of California real property). Proposition 13 is a property tax system based on the date of purchase. Proposition 13 establishes a cutoff date in 1975-76 as the starting point for valuation of continuously owned real estate. Reappraisal occurs when property has been purchased, newly constructed, or there has been a change in ownership. Nordlinger alleged that her annual tax bill was five times higher than those for similar houses on her street.

(a) the appraised value when the property changes hands, or (b) the amount of the property's 1975 assessment, which may be adjusted upward at a rate no greater than 2 percent per year. 120 L Ed 2d at 9. That system necessarily creates great disparities in the amount of taxes paid by taxpayers owning similar properties.

Nordlinger's complaint was that California had denied her — a new owner — the benefits of the same assessment value that her neighbors — older owners — enjoyed. In assessing Nordlinger's federal equal protection claim, the Supreme Court stated:

> "The appropriate standard of review is whether the difference in treatment between newer and older owners rationally furthers a legitimate state interest. In general, the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decision maker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. This standard is especially deferential in the context of classifications made by complex tax laws. '[I]n structuring internal taxation schemes "the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." ' " 120 L Ed 2d at 13 (citations omitted).[9]

The Supreme Court concluded that the classifications created by Proposition 13 furthered the state's legitimate interests in local neighborhood preservation, continuity and stability which is protected by discouraging rapid turnover of homes or businesses, and in protecting the "reliance" interests of existing homeowners (as of the date Proposition 13 was passed). Those homeowners might well have bought their homes relying on a trend of stable or moderately rising property taxes. The trend to much higher taxes conceivably might force them to sell their homes. In contrast, home

---

[9] *See, e.g., Allied Stores v. Bowers, supra* note 4, 358 US at 529 (holding that state legislatures need not state an explicit purpose due to presumption that purposes of tax assessment are valid); *Brown-Foreman Co. v. Kentucky,* 217 US 563, 573, 30 S Ct 578, 54 L Ed 883 (1910) ("If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of equal protection of the law.").

buyers after Proposition 13, being aware of the rising trend of taxes, could elect not to purchase a new home. 120 L Ed 2d at 13-14. The Supreme Court concluded:

> "Time and again, however, this Court has made clear in the rational-basis context that the 'Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.' (footnote omitted). *Vance v. Bradley*, 440 US 93, 97, 59 L Ed 2d 171, 99 S Ct 939 (1979). Certainly, California's grand experiment appears to vest benefits in a broad, powerful, and entrenched segment of society, and, as the Court of Appeal surmised, ordinary democratic processes may be unlikely to prompt its reconsideration or repeal. Yet many wise and well-intentioned laws suffer from the same malady. [Proposition 13] is not palpably arbitrary, and we must decline petitioner's request to upset the will of the people of California." *Id.* at 17 (citation omitted).

*But see Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 US 336, 109 S Ct 633, 102 L Ed 2d 688 (1989) (because of intentional and systematic discrimination, county tax scheme violated Equal Protection Clause); *Louis K. Liggett Co. v. Lee*, 288 US 517, 534, 53 S Ct 481, 77 L Ed 929 (1933) (rejecting state tax favoring properties who owned only one store); *Cumberland Coal Co. v. Bd. of Revision*, 284 US 23, 28-30, 52 S Ct 48, 76 L Ed 146 (1931) (invalidating a state tax assessment scheme on equal protection grounds).

Applying *Nordlinger v. Hahn's* analysis to the present case, we agree with the Tax Court that Measure 5 is based on a legitimate state interest. The Tax Court stated: "The objective of [Measure 5] was to limit the total taxes that could be levied on property. That objective is a legitimate state interest." *Savage v. Munn, supra,* 12 OTR at 156. We also agree with the Tax Court that Measure 5's classification of property has a rational basis. The Tax Court stated:

> "The legislative body, in this case the people, has determined that taxes in excess of $25 per $1,000 of assessed value for the year 1991-1992 are detrimental and should not be allowed. To limit taxes, it has chosen to reduce each taxing unit's levy by a proportionate amount in each case where the levies would otherwise exceed the limit." *Id.* at 157.

*See Nordlinger v. Hahn, supra,* 120 L Ed 2d at 15-16 (citing *Schweiker v. Wilson,* 450 US 221, 235, 101 S Ct 1074, 67 L Ed 2d 186 (1981) (classification scheme must rationally advance a reasonable and identifiable governmental objective)). Plaintiffs, thus, have not shown that Measure 5 fails the federal rational basis test.

■    Plaintiffs urge this court to focus on the lack of uniformity in taxation created by the pro-rata reduction mechanism under Measure 5. However, *Nordlinger v. Hahn,* makes it clear that the federal Equal Protection Clause does not require uniformity of property taxation. *See Nordlinger v. Hahn, supra,* 120 L Ed 2d at 16 n 8 ("Nor do we suggest that the Equal Protection Clause constrains administrators * * * from violating state law requiring uniformity of taxation of property"); *see also Allied Stores v. Bowers,* 358 US 522, 527, 79 S Ct 437, 3 L Ed 2d 480 (1959) (if the classification is neither capricious nor arbitrary, and rests on some reasonable consideration of difference or policy, there is no denial of the equal protection of the law); *Puget Sound Power & Light Co. v. King County,* 264 US 22, 27-28, 44 S Ct 261, 68 L Ed 541 (1924) ("the Fourteenth Amendment was not intended, and is not to be construed, as having any such object as the stiff and unyielding requirements of equality in state constitutions").

Plaintiffs seek to distinguish Proposition 13 from Measure 5 factually by arguing that, in California, unlike in Oregon, there are no local taxing authorities.[10] True, Proposition 13 is different from Measure 5. In California there are no local taxing authorities, and Proposition 13 does not appear to share the city-property taxpayer versus county-property taxpayer issue that is, at least theoretically, created by Measure 5. It is the similarity between the two schemes, however, that is the key under both Proposition 13 and Measure 5, *i.e.,* a property taxpayer may pay more to the same taxing authority than another taxpayer whose property value is identical. Thus, the Equal Protection Clause analysis is the same.

■    Article XI, section 11b(4), is not constitutionally infirm under the federal Equal Protection Clause merely

---

[10] *See Savage v. Munn,* 12 OTR 145, 148-50 (1992) (describing Oregon's property tax system and how Measure 5 impacts that system).

because it achieves its property tax limitation in a manner different than that used in Proposition 13. Under both schemes, the outcome is the same; one property taxpayer may pay more to the same taxing authority than a similarly situated neighbor.[11]

Unless a classification warrants some form of heightened review, the federal Equal Protection Clause requires only that the classification "rationally further" a legitimate state interest. *Nordlinger v. Hahn, supra*, 120 L Ed 2d at 12. Measure 5 meets this test. The Tax Court properly entered judgment for defendants.

The judgment of the Tax Court is affirmed.

---

[11] The Equal Protection Clause does not prevent a state from imposing different rates of taxation on different classes of persons or property. *Carmichael v. S. Coal and Coke Co.*, 301 US 495, 509, 57 S Ct 868, 81 L Ed 1245 (1937). State taxation is an area where the Supreme Court has given the greatest deference to legislative judgment. *See Lehnhausen v. Lake Shore Auto Parts Co.*, 410 US 356, 93 S Ct 1001, 35 L Ed 2d 351 (1973) (upholding constitutionality of tax on corporate property even though private individual paid no taxes). Discrimination is constitutionally impermissible only if it is "invidious" in nature. 410 US at 359.