Argued and submitted June 12, reversed and remanded in part; otherwise affirmed
August 13, 2003

David G. HINKLEY,
an individual;
and Mid-Valley Presort & Mailing, Inc.,
an Oregon corporation,
*Appellants,*

*v.*

EUGENE WATER & ELECTRIC BOARD,
a public body,
*Respondent.*

16-01-18636; A118295

74 P3d 1146

James M. Brown argued the cause for appellants. With him on the briefs was Enfield Brown Knivila Razor & Cook.

Josephine H. Mooney argued the cause for respondent. With her on the brief was Calkins & Calkins.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs David G. Hinkley and Mid-Valley Presort & Mailing, Inc. (Mid-Valley) appeal from the trial court's judgment of dismissal of their claims for declaratory and injunctive relief against defendant Eugene Water & Electric Board (EWEB). The court granted defendant's ORCP 21 A motion to dismiss on the grounds of lack of standing and absence of a justiciable controversy. We affirm the dismissal as to Mid-Valley and reverse and remand as to Hinkley.

In reviewing the judgment of dismissal, we assume the truth of all facts alleged in plaintiffs' complaint, drawing all inferences in favor of plaintiffs. *Patterson v. Wasner*, 128 Or App 254, 256, 875 P2d 506 (1994); *Johnson v. Miller*, 113 Or App 98, 100-01, 831 P2d 71 (1992).[1] In September 2001, plaintiffs filed this action seeking declaratory and injunctive relief against defendant under the Uniform Declaratory Judgments Act (UDJA), ORS 28.010 to 28.160, based on defendant's alleged failure to follow required public contracting practices. In plaintiffs' second amended complaint, they alleged that

> "Oregon law requires that all public contracts be based upon competitive bids or proposals. Under ORS 279.015 certain public contracts are exempted from competitive bidding if the public contracting agency has entered into the contract or contracts with qualified nonprofit agencies providing employment opportunities for disabled individuals within the meaning of and subject to the definitions and requirements set forth in ORS 279.835 to 279.855. ORS 279.015(1)(b).
>
> "* * * * *
>
> "On March 2, 2001, defendant EWEB issued a 'Request for Proposal' for certain janitorial services. The terms of that proposal specified that the contract would be limited to

---

[1] In *Johnson*, we observed that "[p]leadings in a declaratory judgment proceeding are to be liberally construed, ORS 28.120, and a court should not * * * grant an ORCP 21 motion against a complaint seeking a declaratory judgment if it states a justiciable controversy." 113 Or App at 100 (footnote omitted). *See also Reynolds v. State Board of Naturopathic Exam.*, 80 Or App 438, 442, 722 P2d 739 (1986) ("it is wrong to dismiss a complaint for declaratory relief on the ground that it fails to state a claim, if it alleges a justiciable controversy").

> participation from 'qualified rehabilitation facilities' within the meaning of ORS 279.835 through 279.855."

Plaintiffs further alleged that, after issuing the proposal, defendant contracted with two companies to provide janitorial services but, in doing so, did not comply with either the competitive bidding requirements or the "qualified rehabilitation facilities" exemption. *See* ORS 279-015; ORS 279.835 - 279.855. Finally, plaintiffs argued that, because of defendant's noncompliance with the public contracting laws, they were entitled

> "to judgment from this Court declaring defendant's duty to adhere in its contracting practices to the requirements of Chapter 279, ORS generally and, more specifically, to the requirements of the Products of Disabled Individuals Act and, further and particularly, that it may enter into contracts exempt from public bidding requirements under the Products of Disabled Individuals Act only with nonprofit agencies listed by the Department of Administrative Services and for products and/or services at prices established by the Department of Administrative Services and, except upon full compliance with the Products of Disabled Individuals Act, must adhere to competitive bidding practices in acquisition of products and services. Plaintiffs are further entitled [to] injunctive relief compelling defendant's compliance with the requirements of law."

Defendant moved, pursuant to ORCP 21 A, to dismiss plaintiffs' complaint on the grounds that plaintiffs had "(1) fail[ed] to identify an actual and substantial justiciable controversy and (2) fail[ed] to plead facts sufficient to establish standing to seek declaratory judgment." The trial court ultimately granted the motion to dismiss against both plaintiffs. The court's order and the final judgment of dismissal contained no findings and did not specify whether the dismissal was based on lack of standing, lack of justiciability, or both.

■ We begin with plaintiff Hinkley. Plaintiffs' second amended complaint alleged that Hinkley

> "is a resident of the City of Eugene and registered elector in Lane County. Mr. Hinkley is dependent upon electricity and water services provided by defendant Eugene Water &

Electric Board and subject to and affected by the rates established for said services."

The complaint further alleged that defendant's

"failure to follow the requirements of law in entering into the contracts * * * precluded contract opportunities for non-profit agencies serving persons with disabilities that have qualified for listing by DAS, it has circumvented the Fair Market Price protections within pricing established and listed by DAS, it has denied competitive bidding opportunities to private for profit enterprises and *it has incurred higher costs of operations contrary to its obligations to its ratepayers*."

(Emphasis added.)

On appeal, Hinkley contends that those allegations sufficiently pleaded his standing and the existence of a justiciable controversy. That is so, he asserts, because, "[w]ith the benefit of reasonable and logical inferences to which the parties are entitled on the motion to dismiss, the complaint alleges that non-competitive procurement practices means higher prices for acquisition of goods and services and that those higher prices affect the prices paid by consumers." Thus, by direct analogy to the law of "taxpayer standing," Hinkley urges that he, as an EWEB ratepayer, is entitled to pursue this action because defendant's alleged practices will have a practical financial impact on him personally.[2]

Defendant responds that Hinkley's allegation that defendant's alleged violation of public contracting laws has caused defendant to "incur[ ] higher costs of operations contrary to its obligations to its ratepayers" is "speculative" and otherwise "insufficient to meet the statutory requirement of an injury or other impact beyond an abstract interest in the correct application of a law." Defendant argues, particularly,

---

[2] *See, e.g., Savage v. Munn*, 317 Or 283, 291, 856 P2d 298 (1993) (the plaintiffs had standing as property taxpayers to challenge the constitutionality of a constitutional amendment where they "alleged that [the amendment] will have the effect of making them pay proportionally more for the same (or fewer) services"); *Chadwick v. Alexander*, 310 Or 700, 702-04, 801 P2d 797 (1990) (the plaintiff did not allege taxpayer standing where he conceded that the county tax collector's failure to identify the percentage of taxes levied by a city commission caused him no actual or potential financial harm and his only asserted interest was in "the truth").

that "Hinkley does not allege that his rates have increased, or even that they may increase, as the result of the subject contracts[,]" and that the "abstract claim that higher costs have been incurred" is "not adequate, without improper judicial speculation, to allege actual or potential 'fiscal consequences' of the contracts * * *."

■      ORS 28.020 defines the requirements for standing under the UDJA:

> "Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Standing under the UDJA has been denied "when the showing of the required effect has been too speculative or entirely missing." *Gruber v. Lincoln Hospital District*, 285 Or 3, 7, 588 P2d 1281 (1979). Rather, to establish the requisite effect on their "rights, status or other legal relations," plaintiffs must allege "some injury or other impact on a legally recognized interest beyond an abstract interest in the correct application or the validity of a law." *League of Oregon Cities v. State of Oregon*, 334 Or 645, 658, 56 P3d 892 (2002) (citing *Eckles v. State of Oregon*, 306 Or 380, 385, 760 P2d 846 (1988)).

Hinkley's allegations are sufficient to satisfy that threshold standard. In particular, Hinkley alleged that he is a ratepayer and that defendant's "failure to follow the requirements of law in entering into the contracts" caused defendant to "incur[ ] higher costs of operations contrary to its obligations to its ratepayers." We acknowledge, as defendant emphasizes, that Hinkley did not explicitly allege that the "higher costs of operations" would result in an increase in his rates. Nevertheless, the pleadings—and, particularly, the allegation that the utility's incurring of higher costs would violate its "obligation to its ratepayers"—bear the reasonable inference that the resultant higher costs will be passed

through to ratepayers, including Hinkley. Given the procedural posture of the case, and the standard of our review of the pleadings, *see, e.g.*, *Patterson*, 128 Or App at 256, that is sufficient.

Finally, for the same reasons, the pleadings describe a justiciable controversy as to Hinkley in that a decision will have a "practical effect" on his rights. *See generally Utsey v. Coos County*, 176 Or App 524, 539-44, 32 P3d 933 (2001), *rev dismissed*, 335 Or 217 (2003) (addressing "practical effect" requirement). We thus conclude that the trial court erred in dismissing the action as to plaintiff Hinkley.

■ The pleadings pertaining to Mid-Valley are qualitatively—and decisively—different. Plaintiffs' second amended complaint alleges:

> "[Mid-Valley] is an Oregon corporation engaged in the business of providing mail processing services for public and private customers. [Mid-Valley] is qualified, ready, willing and able to provide competitive mail processing services to agencies of the State of Oregon and Oregon counties and cities including those located within Lane County. [Mid-Valley] is adversely affected by decisions by local governments within the State of Oregon under ORS 279.835 to 279.855, the Products of Disabled Individuals Act, when and to the extent said local governments contract for services without competitive bidding when said contracts do not comply with the requirements of the Products of Disabled Individuals Act."

On appeal, Mid-Valley asserts that it is cognizably affected by defendant's application of the Products of Disabled Individuals Law because that application is "precedential"—*i.e.*, that "[i]t is foreseeable that[,] as the consequence of EWEB's practices[,] Mid-Valley will be denied the opportunity to compete for contracts for services not only to EWEB but to other area public entities as well."

Defendant responds that Mid-Valley's alleged interest is impermissibly "hypothetical" and speculative. Specifically:

> "Mid-Valley does not allege any interest under or qualification for the janitorial contracts in question. It does not allege that it sought to bid on either of the contracts.

Indeed, it does not even allege that it offers janitorial services as a part of its business. Its allegations do nothing more than allege that it may wish to bid for mail processing contracts with some unknown public body at some unknown point in the future."

We agree. Mid-Valley's asserted interest in this dispute is that, although it has never attempted to contract with EWEB, it might someday—or it might attempt to bid for a contract with some other public entity that might engage in the same conduct plaintiffs ascribe to EWEB, and that might adversely affect Mid-Valley. That stacking of supposition and speculation is insufficient to establish standing under ORS 28.020. *See, e.g., League of Oregon Cities*, 334 Or at 658; *Gruber*, 285 Or at 7.

Judgment as to plaintiff Hinkley reversed and remanded; otherwise affirmed.