Argued and submitted October 4, 2007, affirmed May 14, petition for review denied July 23, 2008 (345 Or 158)

David DeMARTINO,
*Plaintiff-Appellant,*

*v.*

MARION COUNTY,
a political subdivision
and body politic of the State of Oregon;
State Lottery Commission,
an agency of the State of Oregon;
Ann L. Sherman; Heather R. Tourville;
and Ater Wynne, LLP,
an Oregon limited liability partnership,
*Defendants-Respondents,*

*and*

Ben C. FETHERSTON;
Clark Fetherston Edmonds Lippo; Kieu-Oarh Nguyen;
Patrick Clancy; and Western Financial Group,
*Defendants.*

Marion County Circuit Court
05C16931; A132655

184 P3d 1176

James D. Vick argued the cause for appellant. With him on the briefs was Vick & Conroyd, LLP.

Jane Ellen Stonecipher, Marion County Legal Counsel, argued the cause and filed the brief for respondent Marion County.

Denise G. Fjordbeck, Senior Assistant Attorney General, argued the cause for respondent State Lottery Commission.

With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Brian R. Talcott argued the cause for respondents Ann L. Sherman, Heather R. Tourville, and Ater Wynne, LLP. With him on the brief was Dunn Carney Allen Higgins & Tongue LLP.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Plaintiff, a Marion County taxpayer, filed a complaint against Marion County, the Oregon Lottery Commission, the law firm Ater Wynne, LLP, and two of its lawyers, who provided legal services to the county. The gravamen of the complaint is that defendants participated in an unlawful scheme to guarantee a $5 million debt of the Oregon Garden. The trial court dismissed the claims against the county and the Lottery Commission for lack of a justiciable controversy. The court also dismissed the claims against the law firm and its lawyers for failure to state a claim. Plaintiff appeals, arguing that the trial court erred in dismissing all of his claims. We affirm.

In reviewing the trial court's rulings dismissing the claims, we accept as true all well-pleaded facts and inferences that may be drawn from them. *Hinkley v. Eugene Water & Electric Board*, 189 Or App 181, 183, 74 P3d 1146 (2003).

Plaintiff's first amended complaint alleges that Marion County issued revenue bonds of $5 million to help finance the Oregon Garden. The principal and interest were to be paid by the Oregon Garden. In the event of default, the county guaranteed payment of both principal and interest. The complaint alleges that the county planned to cover any default with lottery funds that the county received from the Lottery Commission. The complaint alleges that defendant Ater Wynne, LLP, and two of its lawyers, Sherman and Tourville, acted as bond counsel for the county and provided legal advice and a formal written opinion concerning the legality of the bonds and the county's guarantee of the bonds.

The complaint alleges that the Oregon Garden has defaulted on its payment obligation under the bonds and that the county is now required to make the bond payments or will be required to do so in the immediate future. The complaint further alleges that the county has represented to the *Statesman Journal*, a newspaper of general circulation, that the county will refinance the debt of the Oregon Garden by paying $2 million of the debt to the bond holders, and that the

Oregon Garden will eventually repay the amount to the county.

The complaint alleges that the county is prohibited by Article XI, sections 7, 8, and 9, of the Oregon Constitution from contracting with bond holders to extend the county's credit or expend county money to pay the debt of the Oregon Garden. The complaint alleges that the county also is prohibited from contracting with the Lottery Commission to expend lottery funds to pay the debt of the Oregon Garden. The complaint further alleges that the use of commingled dedicated county funds for purposes other than those prescribed by ordinance, statute, or the constitution is a violation of state law.

Plaintiff alleges that he is a taxpayer in the county and that the conduct of defendants as alleged in his complaint "will have actual or potential adverse fiscal consequences upon the plaintiff."

Based on the foregoing allegations, the complaint alleges two claims for relief. First, it alleges a claim against the county and the Lottery Commission under the Declaratory Judgments Act. Plaintiff seeks a declaration that the portion of the revenue bond contract requiring the county to pay the revenue bond from lottery funds or property tax revenue is unlawful; that the Lottery Commission cannot transfer lottery funds to the county to pay the debt of the Oregon Garden; and that neither the State of Oregon nor the county can lend credit to, extend credit for, or assume or pay the debt of the Oregon Garden. Second, the complaint alleges a claim for negligence against Ater Wynne and the two lawyers who provided counsel to the county. Plaintiff seeks $10 million in economic damages for their allegedly errant advice to the county.

Defendants moved to dismiss the complaint. The county and the Lottery Commission both moved to dismiss on the ground that, among other things, plaintiff lacks standing to assert a claim under the Declaratory Judgments Act. According to the county and the Lottery Commission, the complaint fails to allege a factual basis from which it could be inferred that plaintiff will be injured by their use of the public

funds as alleged. The Ater Wynne defendants moved to dismiss for failure to state a claim, arguing that they could not be held liable to plaintiff in negligence because plaintiff was not their client. As we have noted, the trial court granted the motions.

On appeal, plaintiff assigns error to the trial court's decision to grant the motions to dismiss. He also asserts that the trial court should have given him an opportunity to replead. Defendants respond that the trial court correctly granted their motions and that, further, the court did not err in failing to grant leave to replead, because plaintiff never asked for such leave in the first place.

■ We begin with the trial court's dismissal of the claims against the county and the Lottery Commission on statutory standing grounds. Plaintiff argues that the trial court erred in dismissing those claims because the complaint plainly alleged that the actions of the county and the Lottery Commission "will have actual or potential adverse fiscal consequences upon the plaintiff." The county and the Lottery Commission respond that the case law concerning standing to assert claims under the Declaratory Judgments Act makes clear that such an unadorned conclusion does not suffice to establish standing.

The Declaratory Judgments Act, ORS 28.010, provides, in part:

> "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed."

The act, however, further provides that a condition of the court declaring such rights, status, and other legal relations is that the person seeking that relief have standing. ORS 28.020 defines the requirements for standing under the act:

> "Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or

franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Thus, to seek relief under the Declaratory Judgments Act, a plaintiff must allege the requisite effect on the plaintiff's "rights, status or other legal relations." The Supreme Court has held that the "requisite effect" is "some injury or other impact on a legally recognized interest beyond an abstract interest in the correct application or the validity of a law." *League of Oregon Cities v. State of Oregon*, 334 Or 645, 658, 56 P3d 892 (2002) (citing *Eckles v. State of Oregon*, 306 Or 380, 385, 760 P2d 846 (1988)). In this case, the question is whether plaintiff has alleged the "requisite effect" by including in his complaint the allegation that defendants' actions "will have actual or potential adverse fiscal consequences" upon him as a taxpayer.

The Supreme Court has held that a taxpayer's allegations that a challenged government action will have the effect of making him or her pay proportionally more for government services are sufficient to satisfy the standing requirement of ORS 28.020. *See, e.g., Savage v. Munn*, 317 Or 283, 291, 856 P2d 298 (1993). In a similar vein, we have concluded that allegations that a public utility's noncompetitive procurement practices mean higher prices for acquisition of goods and services and that those higher prices affect the prices paid by consumers such as the plaintiff sufficed to establish standing under the Declaratory Judgments Act. *Hinkley*, 189 Or App at 188.

But the courts of this state also have made clear that more is required than just an assertion that the challenged law or action will have an adverse effect; the complaint must allege a factual basis for such a conclusion as to the effect of the law. Particularly instructive in that regard is the Supreme Court's opinion in *Gruber v. Lincoln Hospital District*, 285 Or 3, 7, 588 P2d 1281 (1979).

In *Gruber*, the plaintiff brought a challenge under the Declaratory Judgments Act asserting the invalidity of a health district's contract for services with a physician. His

complaint alleged that he had standing to bring the challenge as a "resident and inhabitant" of the district and as a "taxpayer." The trial court dismissed the complaint, and the Supreme Court affirmed, concluding that the complaint did not contain allegations that were adequate to establish the plaintiff's standing to bring a challenge under the act. The court offered the following explanation:

> "[A] complaint under this section [ORS 28.020] must show how plaintiff's 'rights, status, or other legal relations are affected' by an instrument or enactment, the construction or validity of which he seeks to have determined. Standing under this section has been denied when the showing of the required effect has been too speculative or entirely missing. *See, e.g.*, *Gortmaker v. Seaton*, 252 Or 440, 443, 450 P2d 547 (1969); *Eacret v. Holmes*, 215 Or 121, 125, 333 P2d 741 (1958); *Hale v. Fireman's Fund Ins. Co.*, 209 Or 99, 103-04, 302 P2d 1010 (1956). Though the present complaint described plaintiff as a 'resident and inhabitant of that area encompassed by the geographical limits' of the district and as a 'taxpayer residing within said * * * district,' nothing further is said that bears on a person's rights, status, or other legal relations consequent upon residency within the territory of the district. We do not say that there may not be such consequences of residency that might support a person's standing to seek judicial review of some action of the district, but neither plaintiff's complaint nor his brief refers to them. Rather, plaintiff places reliance on his right as a taxpayer to challenge the misuse of public funds.

> "* * * [A] taxpayer's standing as such to demand equitable relief in his own name in Oregon has depended on allegations that the challenged governmental action had actual or potential adverse fiscal consequences. *See Carman[, et al.] v. Woodruff[, et al.]*, 10 Or 133 (1882); *McKinney v. Watson*, 74 Or 220, 145 P 266 (1915); *Hanson v. Mosser*, 247 Or 1, 10-12, 427 P2d 97 (1967). When a suit under ORS 28.020 is grounded on 'taxpayer' standing, these fiscal consequences presumably represent the effect on plaintiff required by that statute.

> "The present complaint contains no such allegations. It is true that health districts are empowered to levy a property tax. ORS 440.395. However, we are not told whether the district does so or how the alleged contract may affect such taxes. There is no allegation that the challenged

agreement involves the expenditure of tax funds. * * * When the potential fiscal implications of a public contract are not apparent on its face, they should not be left to judicial speculation; they need to be asserted, if a plaintiff relies on his interest as a taxpayer rather than some other 'rights, status, or other legal relations' to proceed under ORS 28.020."

285 Or at 7-8.

In other words, a person seeking standing as a taxpayer must allege *facts* from which the trial court can discern that there are actual or potential adverse consequences on the plaintiff as a taxpayer. In this case, plaintiff's complaint contains the bare allegation that the unlawful expenditure of public funds "will have actual or potential adverse fiscal consequences upon the plaintiff," but no more. Thus, as in *Gruber*, there is in this case no allegation of fact from which a reasonable inference could be made as to *how* defendants' alleged misconduct will affect plaintiff's taxes. There is no allegation from which it can be inferred that the alleged misconduct will require plaintiff to pay proportionally more for the same or fewer services. *See Savage*, 317 Or at 291. In fact, there is no allegation linking the alleged unlawful expenditure to any specific actual or potential adverse fiscal impact on plaintiff.

Plaintiff insists that, in *Gruber*, the court said that taxpayer standing depends solely on an allegation that "the challenged governmental action had actual or potential adverse fiscal consequences." As our quotation from the opinion makes clear, however, in referring to the need for such actual or potential adverse fiscal consequences, the court was characterizing the types of allegations of fact that its previous decisions had deemed to be sufficient. The court did not say that a bare conclusion as to actual or potential adverse fiscal consequences is sufficient. The court made clear that the nature of the alleged adverse fiscal consequence must be apparent from the pleading. Particularly "when the potential fiscal implications of a public contract are not apparent on its face," the court emphasized, "they should not be left to judicial speculation; they need to be asserted." 285 Or at 9.

This is not a case in which the adverse fiscal impact of the county's actions is apparent. There must be facts alleged from which the trial court can discern a link between the county's and the Lottery Commission's alleged unlawful conduct and the potential impact on plaintiff. Those factual allegations are lacking in plaintiff's complaint. We therefore agree with the trial court that plaintiff's complaint does not show that he has standing, and we affirm the trial court's dismissal of the claim against the county and the Lottery Commission on that ground.

■       We turn, then, to the trial court's dismissal of plaintiff's negligence claim against defendant Ater Wynne and its individual lawyers for failure to state a claim. Plaintiff argues that the trial court erred in dismissing that claim because those defendants, as statutorily appointed bond counsel, ORS 288.523(1) (2005),[1] breached a duty to "the entire body politic of Marion County" in providing a legal opinion that unlawfully allowed public lottery funds to be diverted from economic development of the county to the Oregon Garden. Because plaintiff is a member of the "body politic" of the county, he asserts, the law firm and its lawyers breached a duty to him.

■       Under Oregon law, a person whose negligent conduct unreasonably creates a foreseeable risk of harm to others and causes injury to another ordinarily is liable in damages for that injury. *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 281, 171 P3d 336 (2007). Oregon law, however, recognizes an exception to that general rule for purely economic losses, as opposed to claims for injury to person or property. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 7, 734 P2d 1326 (1987). Under the "economic loss" exception, one is not liable for negligently causing another's purely economic losses in the absence of some source of duty, such as a special relationship or status, that imposed a duty on the defendant beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. *See generally Harris v. Suniga*, 344 Or 301, 307-09, 180 P3d 12 (2008) (tracing history of economic loss doctrine).

---

[1] ORS 288.523 was repealed in 2007. Or Laws 2007, ch 783, § 234.

■   The relationship of an attorney and client is one such special relationship. *Roberts v. Fearey*, 162 Or App 546, 550-52, 986 P2d 690 (1999). But the attorney's duty runs only to the client, or to an intended third-party beneficiary of the attorney's agreement with the client. *Id.* ("an attorney ordinarily is not liable to those outside of the attorney-client relationship because there is no obligation to protect anyone outside of the attorney-client relationship from economic losses"); *see also Hale v. Groce*, 304 Or 281, 286, 744 P2d 1289 (1987) (extending attorney's duty to intended beneficiary of attorney's promise to the client).

In this case, plaintiff's complaint does not allege facts that could support evidence of a special relationship between plaintiff and the law firm and its individual lawyers, so as to give rise to a duty to protect plaintiff's economic interests and establish a basis for a negligence claim for economic loss. To the contrary, the complaint alleges a special relationship between the firm and its lawyers and the county only.

As we have noted, plaintiff argues that, notwithstanding the fact that the firm and its lawyers were retained by the county alone, those defendants still should be held liable to him as a member of the public, under ORS 288.523(1) (2005). That statute, however, has nothing to do with the relationship of bond counsel to members of the public at large. The statute provided, in part:

> "Notwithstanding any other provision of law relating to the appointment of bond counsel, a public body may provide for the appointment of bond counsel to advise and assist the public body in the issuance of bonds or certificates of participation, including the issuance of refunding bonds and obligations, and in the lawful administration of outstanding bonds or certificates of participation."

ORS 288.523(1) (2005). Thus, the statute merely authorized a public body to retain bond counsel. It did not extend the attorney-client relationship to the public at large.

We therefore agree with the trial court that plaintiff's complaint does not state a claim of negligence, or any claim, for that matter, against Ater Wynne or its individual lawyers.

That leaves plaintiff's last contention, that the trial court erred in denying his request for leave to amend his first amended complaint, and that, if given the opportunity to do so, plaintiff could have cured the defects in his claims against defendants. As defendants point out, however, plaintiff did not file a motion for leave to file a second amended complaint and did not offer a proposed amended pleading or otherwise advise the trial court of the nature of the proposed amendments. Accordingly, we conclude that plaintiff's assignment of error in that regard is not preserved for our review. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (policy behind rule requiring preservation of error is to afford trial court an opportunity to correct any error before it is made).

Affirmed.