Argued and submitted October 8, 2008, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for entry of a declaratory judgment consistent with this opinion and for a declaration that Article VIII, section 8, of the Oregon Constitution does not authorize the injunctive relief that plaintiffs sought
January 23, 2009

## PENDLETON SCHOOL DISTRICT 16R;
Eugene School District 4J;
Crow-Applegate-Lorane School District 66;
Coos Bay School District 9; Corvallis School District 509J;
Josephine County Unit/Three Rivers School District;
Astoria School District 1C; Creswell School District;
Lincoln County School District; Siuslaw School District 97J;
Centennial School District; Amity School District 4J;
Reynolds School District #7; Coquille School District #8;
Parkrose School District #3; Pine Eagle School District #61;
Jefferson School District; McKenzie School District;
Alexandra Kiesling and Timothy Kiesling, minors,
by Amy Cuddy, their guardian ad litem;
Grace Peyerwold, a minor,
by David and Maria Peyerwold, her guardians ad litem;
Marshall Taunton and Harrison Taunton, minors,
by Tim and Wendy Taunton, their guardians ad litem;
and Benjamin Sherman and Claire Sherman, minors,
by Larry Sherman and Diane Nichol, their guardians ad litem,
*Plaintiffs-Appellants,*
*Petitioners on Review,*

*v.*

STATE OF OREGON,
*Defendant-Respondent,*
*Respondent on Review.*

(CC 0603-02980; CA A133649; SC S056096)

200 P3d 133

598

James N. Westwood, Stoel Rives LLP, Portland, argued the cause for petitioners on review. With him on the brief was Robert D. Van Brocklin.

Jeff J. Payne, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Michael T. Garone, and Sara Kobak, Schwabe, Williamson & Wyatt, P.C., Portland, filed a brief on behalf of *amicus curiae* Oregon Business Association.

Maureen Leonard and Charles R. Williamson, filed a brief on behalf of *amicus curiae* Education Justice at Education Law Center.

Rebekah R. Cook, filed a brief on behalf of *amicus curiae* Oregon School Boards Association.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

Plaintiffs in this case are 18 school districts and seven public school students. They filed this action against the State of Oregon, seeking a declaratory judgment that Article VIII, section 8, of the Oregon Constitution requires that the legislature fund the Oregon public school system at a level sufficient to meet certain quality educational goals established by law and a mandatory injunction directing the legislature to appropriate the necessary funds. The trial court granted summary judgment against plaintiffs, and the Court of Appeals affirmed. *Pendleton School Dist. v. State of Oregon*, 220 Or App 56, 185 P3d 471 (2008). We allowed the plaintiffs' petition for review, and now conclude that the legislature has failed to fund the Oregon public school system at the level sufficient to meet the quality education goals established by law and that plaintiffs were entitled to a declaratory judgment to that effect. However, we also conclude that, in adopting Article VIII, section 8, Oregon voters did not intend to achieve the level of funding required in that constitutional provision through judicial enforcement. Consequently, we affirm in part and reverse in part the decision of the Court of Appeals and the judgment of the trial court.

## FACTS AND PROCEDURAL BACKGROUND

The parties agree as to the facts. In the November 2000 general election, the voters of the state adopted Ballot Measure 1, a constitutional amendment that became Article VIII, section 8, of the Oregon Constitution. The relevant part of Article VIII, section 8, provides:

"(1) The Legislative Assembly shall appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law, and publish a report that either demonstrates the appropriation is sufficient, or identifies the reasons for the insufficiency, its extent, and its impact on the ability of the state's system of public education to meet those goals."[1]

---

[1] Article VIII, section 8, also contains a second subsection that provides for equalization grants to certain school districts. That subsection is not relevant to the dispute here.

The next year, the legislature acted to comply with Article VIII, section 8. That legislation, Oregon Laws 2001, chapter 895, identified certain preexisting statutes as setting the pertinent quality goals for the public school system. *Id.* at § 5 (codified as amended at ORS 327.506). The legislation also established a Quality Education Commission (QEC) to determine the amount of funding needed to ensure that the public school system met those goals. *Id.* at §§ 1, 2 (codified at ORS 327.497 and codified as amended at ORS 327.500).[2]

In accordance with the reporting requirement of Article VIII, section 8, the legislature also directed that a report be prepared every biennium. Or Laws 2001, ch 895, § 7 (codified as amended at ORS 171.857). ORS 171.857 provides that the report shall "[d]emonstrate that the amount" appropriated for the public school system "is the amount of moneys as determined by the Quality Education Commission * * * that is sufficient to meet the quality goals." ORS 171.857(4)(a). Alternatively, the report shall

> "[i]dentify the reasons that the amount appropriated for the state's system of kindergarten through grade 12 public education is not sufficient, the extent of the insufficiency and the impact of the insufficiency on the ability of the state's system of kindergarten through grade 12 public education to meet the quality goals."

ORS 171.857(4)(b).

Historically, the legislature never has appropriated the amounts designated by the QEC. For the 2003-05 biennium, the QEC concluded that $6.995 billion was needed to meet the quality goals established by law; the legislature ultimately appropriated $4.9 billion. For the 2005-07 biennium, the QEC concluded that $7.035 billion was needed to meet the quality goals established by law; the legislature appropriated just over $5.2 billion.[3]

---

[2] The amounts determined by the QEC are not necessarily the final word; the legislature specifically provided that it might decline to use the report. *See* Or Laws 2001, ch 895, § 7 (currently codified as ORS 171.857(5)) (if report of QEC is not used, legislature must "identify the reasons for not using the report * * * and shall outline an alternative methodology for making the findings required by section 8, Article VIII"). Insofar as the record shows, however, the legislature has not exercised that power.

[3] In the legislative report mandated by Article VIII, section 8, the Joint Special Committee on Public Education Appropriation stated:

In March 2006, plaintiffs filed this action against the state. Plaintiffs' amended complaint alleged that Article VIII, section 8, required the legislature to appropriate enough money in each biennium to ensure that the state's public school system met the quality goals established by law. The first claim for relief alleged that the legislature had failed to appropriate that sum of money for the 2005-07 biennium and that plaintiffs were entitled to a declaratory judgment that that failure violated Article VIII, section 8.

A second claim for relief in plaintiffs' complaint also sought a declaratory judgment, but under a different provision of the Oregon Constitution—Article VIII, section 3. That section provides:

"The Legislative Assembly shall provide by law for the establishment of a uniform, and general system of Common schools."

Plaintiffs contended that Article VIII, section 3, required the legislature to "appropriate funds sufficient to maintain an adequate system of K-12 public schools," but the legislature had not appropriated sufficient funds for the 2005-07 biennium.

In a third claim for relief, plaintiffs sought a mandatory injunction "requiring defendants to appropriate for the current biennium funding sufficient to provide the Required Service Levels, *i.e.*, the service levels that the [QEC] determined were necessary to achieve quality goals established by law."

The state moved for summary judgment, contending that neither Article VIII, section 8, nor Article VIII, section 3, required the legislature to appropriate more funds for the public school system than already had been appropriated. The state argued that the legislature could comply with Article VIII, section 8, either by funding the public school system sufficient to meet the quality goals or by explaining in a report the reasons for the insufficient funding, the extent of

"It is the determination of the Joint Special Committee on Public Education Appropriation that the amount of moneys appropriated for the 2005-2007 biennium for K-12 public education is insufficient to meet the recommended funding levels of the Quality Education Commission."

the insufficiency, and the effect that the insufficiency might be expected to have on educational goals. The state further contended that plaintiffs' claim under Article VIII, section 3, was foreclosed by precedent from this court and the Court of Appeals.

Plaintiffs opposed the state's motion for summary judgment and responded with their own motion for partial summary judgment. Plaintiffs contended that Article VIII, section 8, unambiguously requires the legislature to provide the level of funding that the public school system needs to meet the quality educational goals established by law because Article VIII, section 8, used the word "shall" in setting out that requirement. The reporting requirement, plaintiffs argued, was a separate obligation, independent of the mandatory duty to fund the public school system at the level specified in the provision. Plaintiffs asserted that the state's interpretation of Article VIII, section 8, which would allow the legislature to fund the public school system below the specified level if it published an appropriate report, thereby rendering Article VIII, section 8, meaningless. As for Article VIII, section 3, plaintiffs maintained that this court in construing that provision had recognized an educational adequacy requirement in *Olsen v. State ex rel Johnson*, 276 Or 9, 554 P2d 139 (1976), and they therefore were entitled to a mandatory injunction under that provision, as well.

After hearing argument, the trial court granted the state's motion for summary judgment and denied plaintiffs' motion for partial summary judgment.

Plaintiffs appealed. In the Court of Appeals, the state responded to plaintiffs' arguments on the merits, but it also contended that the case was no longer justiciable. The state asserted that the courts cannot enter a declaratory judgment that has the effect of enjoining the legislature from passing unconstitutional legislation in the future, citing *Tillamook Co. v. State Board of Forestry*, 302 Or 404, 730 P2d 1214 (1986). The state also argued that plaintiffs' claim for injunctive relief had become moot with the end of the 2005-07 biennium.

The Court of Appeals first addressed the state's justiciability argument. *Pendleton School Dist.*, 220 Or App at

63-67. The court concluded that *Tillamook* was distinguishable because that case had involved only the possibility of future legislation. *Id.* at 63-64. The court agreed that plaintiffs' claim for injunctive relief for the 2005-07 biennium was moot because that biennium had ended. *Id.* at 66. However, the court held that the claim for declaratory judgment as to the 2005-07 biennium was not moot because plaintiffs had alleged continuing harm from the underfunding during that biennium. *Id.* at 66-67.

The Court of Appeals then turned to the merits. The court first rejected plaintiffs' claim that Article VIII, section 3, mandated any particular level of funding for the public school system. In a prior case, the Court of Appeals had concluded that Article VIII, section 3, was concerned with uniformity in education, not funding. *Id.* at 67-68 (citing *Sherwood School Dist. 88J v. Washington Cty. Ed.*, 167 Or App 372, 382, 6 P3d 518, *rev den*, 331 Or 361 (2000)). That precedent, the court held, foreclosed plaintiffs' Article VIII, section 3, argument.

The Court of Appeals then turned to plaintiffs' Article VIII, section 8, argument. On appeal, plaintiffs had renewed their argument that the use in Article VIII, section 8, of the word "shall" made the funding requirement a command to the legislature to fund the public school system at a specified level, while the use of the word "and" before the phrase "publish a report" demonstrated that the reporting requirement was a separate legislative obligation. *Id.* at 69-70. The Court of Appeals concluded, however, that the requirement that the legislature report that the funding was below the specified level nonetheless recognized the possibility that, on occasion, the funding may be insufficient. *Id.* at 70. In that court's view, plaintiffs' interpretation of Article VIII, section 8, would nullify the implicit recognition in that provision that funding, from time to time, may be insufficient. *Id.* at 70, 72. Although Article VIII, section 8, did use the words "shall" and "and," the court concluded that the usual sense of those words was not dispositive because those terms derived their meaning from context. *Id.* at 70-72. In the context of Article VIII, section 8, the court concluded:

> "[T]he word 'and' separating the two legislative obliga-
> tions—to fund and to report—must be used in a *dis*junctive
> sense[,] and * * * the word 'shall' was, as a result, intended
> to be permissive."

*Id.* at 70 (emphasis in original). The Court of Appeals there-
fore affirmed the judgment of the trial court.

As noted, we allowed plaintiffs' petition for review.

## JUSTICIABILITY

■          Before we consider the merits of plaintiffs' claims, we
first must address whether the issues presented here remain
justiciable. The state notes that plaintiffs sought relief
as to education funding for (1) the 2005-07 biennium, and
(2) future biennia. The state contends that the issues regard-
ing the 2005-07 biennium are now moot because that bien-
nium has ended. As for future biennia, the state asserts that
*Tillamook* stands for the proposition that the judicial branch
cannot enjoin the legislature from passing unconstitutional
legislation in the future and, therefore, all plaintiffs' claims
are nonjusticiable.

This court has summarized the requirements for jus-
ticiability in the context of a declaratory judgment action as
follows:

> "Justiciability is a vague standard but entails several defi-
> nite considerations. A controversy is justiciable, as opposed
> to abstract, where there is an actual and substantial contro-
> versy between parties having adverse legal interests. The
> controversy must involve present facts as opposed to a dis-
> pute which is based on future events of a hypothetical issue.
> A justiciable controversy results in specific relief through a
> binding decree as opposed to an advisory opinion which is
> binding on no one. The court cannot exercise jurisdiction
> over a nonjusticiable controversy because in the absence of
> constitutional authority, the court cannot render advisory
> opinions."

*Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289
(1982) (citations omitted).

The state does not dispute that this case involves
an actual and substantial controversy, or that the parties
have adverse legal interests. Instead, the state's argument

appears to be that a challenge to future budget legislation involves hypothetical future events, not present facts. The state also appears to maintain that the courts cannot grant specific relief through a binding decree, but instead merely would be issuing an advisory opinion; as applied to the facts here, it contends that no relief is available for the underfunding in the 2005-07 biennium, while *Tillamook* prohibits the courts from granting relief as to future biennia.

We conclude that two cases demonstrate why the state's justiciability argument is flawed. In *Brown*, the Attorney General had filed a declaratory judgment action in circuit court, challenging the Oregon State Bar's opinion that it would violate legal ethics rules for the Attorney General to give legal advice *ex parte* to an agency director and hearings officer in a contested case (the Attorney General, in fact, had given legal advice under those circumstances). This court concluded that the matter was justiciable:

> "While the controversy arises from advisory [ethics] opinions [by the Bar], the substance of the controversy concerns the interpretation of a statute. The court is requested to consider a specific set of facts—whether plaintiff [the Attorney General] may give advice upon request to agencies in contested cases where plaintiff's office is not involved in the case, agency rules do not prohibit the conduct[,] and the recipient does not have authority to issue binding orders. The controversy involves present facts, the plaintiff's existing statutory duty."

293 Or at 450.

Similarly, in *Savage v. Munn*, 317 Or 283, 856 P2d 298 (1993), the plaintiffs had contended that Ballot Measure 5 (1990), which became Article XI, section 11b, of the Oregon Constitution, violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This court concluded that the matter was justiciable:

> "Plaintiffs here are complaining of the manner in which their taxes are capped under Measure 5. The workings of Measure 5 are 'present facts,' not simply possible future events. A binding decree would have the effect of invalidating the proportional reduction scheme contained in

[Measure 5]. Such an outcome would hardly be an advisory opinion."

*Id.* at 292 (footnote omitted). This court added that, while the record was not clear, "it appears that, at least as to Lear [one of the plaintiffs], Measure 5 has had some cognizable effect." *Id.* at 292 n 6.

We conclude that both *Brown* and *Savage* are analogous to the situation here, and they establish that the present matter is justiciable. The issue whether Article VIII, section 8, imposes a duty on the legislature to fund the public school system at a specified level every biennium presents a set of present facts regarding the interpretation of a constitutional provision; it is not simply an abstract inquiry about a possible future event. *See Savage*, 317 Or at 292 ("The workings of Measure 5 are 'present facts,' not simply possible future events."); *Brown*, 293 Or at 450 ("present facts" were "plaintiff's existing statutory duty" in particular factual context). *Compare Tillamook*, 302 Or at 413 (matter not justiciable when parties sought declaratory judgment to prohibit speculative future legislation, as that would be advisory opinion). We turn, then, to plaintiffs' claims.

## ARTICLE VIII, SECTION 8

The first issue presented involves the meaning of Article VIII, section 8. Because the voters adopted that section through the initiative process, we seek to determine the intent of the voters in adopting it. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 559, 871 P2d 106 (1994).

" 'The best evidence of the voters' intent is the text of the provision itself. The context of the language of the ballot measure may also be considered; however, if the intent is clear based on the text and context of the constitutional provision, the court does not look further.' "

*Id.* (footnote omitted) (quoting *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 378, 851 P2d 595 (1993)).

Pursuant to our methodology, we begin with the text of Article VIII, section 8. Again, Article VIII, section 8, provides, in part:

"(1) The Legislative Assembly shall appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law, and publish a report that either demonstrates the appropriation is sufficient, or identifies the reasons for the insufficiency, its extent, and its impact on the ability of the state's system of public education to meet those goals."

Plaintiffs contend that the word "shall" in Article VIII, section 8, imposes an absolute duty on the legislature to appropriate a specified level of funding for the public school system. Plaintiffs also contend that the word "and" before the reporting requirement means that the legislature also has a duty to report on its actions. Plaintiffs argue, however, that the duty to report is separate from, rather than a qualification of, the otherwise apparently mandatory duty to fund the public school system at the specified level. They analogize the reporting requirement to a tax return: Just as filing an accurate tax return does not relieve the taxpayer of the obligation to pay the taxes due, the legislature's report that it failed to fund the public school system at the constitutionally specified level does not relieve the legislature from the obligation to provide the specified level of funding. Finally, plaintiffs argue that that funding obligation, as they have construed it, is legally enforceable by judicial action.

As noted, the Court of Appeals rejected that reading of Article VIII, section 8. It concluded that "the word 'shall' was * * * intended to be permissive," concluding that, in this context, "shall" means "may." *Pendleton School Dist.*, 220 Or App at 70-72. That, we think, goes too far. We agree that "shall" may carry a number of meanings, depending on its context. *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 939-41 (2d ed 1995) (identifying eight different shades of meaning for "shall," including one that is permissive). However, in considering the text of Article VIII, section 8, we cannot agree that "shall" means "may." The voters did not intend to give the legislature *permission* to fund the public school system at a constitutionally specified level. Instead, Article VIII, section 8, uses "shall" as a directive or a command that states a requirement. Read in isolation, the first part of Article VIII, section 8, requires the legislature to

"appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law." We therefore agree with plaintiffs' reading of the first part of Article VIII, section 8.

That said, however, we cannot ignore the other part of Article VIII, section 8. That part requires publication of "a report" by the legislature that *either* (1) asserts that the legislature sufficiently has funded the public school system (and explains why the legislature believes that to be true); or (2) acknowledges that the funding falls short of the constitutional goal, but explains the legislature's reason for choosing the lower level of funding and the extent and impact of the insufficiency. The existence of the reporting requirement demonstrates that Article VIII, section 8, contemplates the possibility that the legislature might not fund the public school system at the constitutionally specified level in a particular biennium.

Thus, the text of Article VIII, section 8, presents two seemingly contradictory concepts. On the one hand, Article VIII, section 8, directs the legislature to fund the public school system at a specified level. On the other hand, Article VIII, section 8, contemplates the possibility that the public school system will not be funded at the specified level and that the insufficiency would remain. The text of Article VIII, section 8, does not explain how to reconcile the two.

■    If the voters' intent is unclear from the text and context of an initiated constitutional provision, we turn to the provision's history. *See, e.g., Shilo Inn v. Multnomah County*, 333 Or 101, 117, 36 P3d 954 (2001), *modified on recons on other grounds*, 334 Or 11, 45 P3d 107 (2002) (if doubt remains as to meaning of initiated or referred constitutional provision, "the court will consider the history * * * in an effort to resolve the matter"); *Ecumenical Ministries*, 318 Or at 560, 560 n 8 (noting that court will consider history "if legislative intent remains unclear after an examination of text and context"). In this case, we have considered the historical materials proffered by the parties. We find nothing in them indicating how we are to resolve the conflict in Article VIII, section 8, between the directive to fund the public school system at a

constitutionally specified level and the reporting require-
ment's apparent acceptance of the idea that the public school
system may not be funded at that level.

■       The parties have attempted to harmonize the two
seemingly contradictory provisions found within Article VIII,
section 8. Each side does so, however, by ignoring one provi-
sion: Plaintiffs emphasize the funding requirement at the
expense of the reporting requirement, while the state empha-
sizes the reporting requirement at the expense of the funding
requirement. Unlike the parties, we are not free to ignore any
part of Article VIII, section 8. We must give due regard to all
provisions, not some of them.

        In this particular case, we are mindful of our obliga-
tion to determine what the law is. *See Marbury v. Madison*,
5 US (1 Cranch) 137, 177, 2 L Ed 60 (1803) (Marshall, C. J.)
("It is, emphatically, the province and duty of the judicial
department to say what the law is."). In announcing what the
law is, however, we are not authorized to grant relief that is
inconsistent with the provisions of Article VIII, section 8. And
it is the distinction between determining what the law is and
forging some form of relief under that law that demonstrates
how we must reconcile the two parts of Article VIII, section 8.
We can give due regard to both provisions by individually
evaluating each particular form of relief that plaintiffs have
requested and determining whether that relief is consistent
with both parts of Article VIII, section 8. If a requested form
of relief is inconsistent with either provision, then that form
of relief is not available. If the requested relief is consistent
with both parts, then the courts may grant it.

■       Here, plaintiffs sought a declaratory judgment and
injunctive relief. As to its declaratory judgment claim, plain-
tiffs requested two different determinations:

"(i) the Legislature must abide by the Oregon Constitution
and appropriate in each biennium a sum of money suffi-
cient to ensure that the state's system of K-12 public edu-
cation meets the quality goals established by law, and
(ii) the Legislature has failed to appropriate a sum of money
sufficient to ensure, for the 2005-07 biennium, that the
state's system of K-12 public education meets the quality
goals established by law."

Plaintiffs also sought an injunction that would require the legislature to fund the public school system at the level specified in Article VIII, section 8.[4]

■ We conclude that the courts may grant a declaratory judgment that the legislature failed to fully fund the public school system, if that is the case. A declaration to that effect would be consistent with the first provision of Article VIII, section 8, which directs the legislature to appropriate funds sufficient to meet legislatively established goals. Conversely, a declaration that funding is insufficient is not inconsistent with the reporting requirement of Article VIII, section 8, which requires the legislature itself to admit any underfunding. Because the state admits that the legislature failed to fund the public school system for the 2005-07 biennium at the levels required by Article VIII, section 8, we can determine and declare that the legislature failed to act in accordance with the constitutional mandate. The trial court should have entered a declaratory judgment on that limited ground.

We conclude, however, that the courts cannot grant the other forms of relief requested by plaintiffs. Plaintiffs also sought a declaratory judgment that the legislature must fund the public school system in each biennium at the levels required by Article VIII, section 8, as well as an injunction requiring the legislature to fund the public school system at those levels. Those forms of relief are consistent with the first provision of Article VIII, section 8, which requires the legislature to appropriate sufficient funds to meet the quality goals established by law. They are not, however, consistent with the reporting provision of Article VIII, section 8, as we will explain.

---

[4] The parties dispute whether plaintiffs' request for injunctive relief is moot. The Court of Appeals concluded that it was. *Pendleton School Dist. v. State of Oregon*, 220 Or App 56, 66, 185 P3d 471 (2008) ("Because any exercise of authority by this court directing action with regard to the 2005-07 biennium can have no practical effect on the parties, the claim for injunctive relief is moot."). We disagree. Plaintiffs posit that Article VIII, section 8, requires the legislature to fund public education at a specific level each biennium and they seek a declaration to that effect. The state denies that the constitutional provisions can be complied with only in that way. Thus, there is a concrete, present, and ongoing dispute between the parties as to what the constitution requires the legislature to do, and a declaration of the answer will affect legislative choices in the present legislative session and those to come. Plaintiffs are thus entitled to maintain this proceeding and to seek injunctive relief.

The reporting provision of Article VIII, section 8 contemplates the possibility that the legislature will not fund the public school system at the legislatively specified level in a particular biennium and provides that, in that instance, the legislature will report its failure to the public. The report is not simply an admission that funding is insufficient; instead, Article VIII, section 8, directs that the report must "identify[y] the reasons for the insufficiency, its extent, and its impact on the ability of the state's system of public education to meet those [specified educational] goals." By requiring the legislature to explain its failure to meet the constitutional directive, Article VIII, section 8, negates plaintiffs' claim that the duty to fund the public school system at a certain level is enforceable by the injunction that plaintiffs seek. If the courts were to enforce the funding of the public school system at the level identified by Article VIII, section 8, then it would not matter what the legislature's reasons were for failing to do so. If the courts were to enforce the funding of the public school system at the specified level, then the deficiency could not "impact * * * the ability of the state's system of public education to meet those [specified educational] goals," because the courts would not permit the deficiency to continue.[5]

A declaration or injunction requiring the legislature to fund the public school system at the levels required by Article VIII, section 8, thus would not be consistent with the reporting requirement. Therefore, Article VIII, section 8, does not permit a declaration or injunctive relief of the kind that plaintiffs seek here.[6]

We conclude that the trial court should have granted partial summary judgment for plaintiffs as to the part of their declaratory judgment claim that sought a determination that the legislature had failed to fund the public school system at the level specified in Article VIII, section 8. We

---

[5] The specifics of the reporting requirement also show why plaintiffs' analogy to tax returns fails. Tax returns do not ask the taxpayer to explain why he or she failed to pay taxes, or to estimate how his or her missing taxes will hurt government revenues, because that information is irrelevant. Tax returns are concerned with whether the taxpayer owes taxes, not with why the taxpayer did not pay them.

[6] We do not address other circumstances under which injunctive relief might be sought (*e.g.*, if the legislature failed entirely to publish a report).

reverse that part of the trial court's judgment and the contrary decision of the Court of Appeals. We otherwise affirm the grant of summary judgment for the state. As a consequence, the court's judgment should declare that Article VIII, section 8, does not authorize the injunctive relief that plaintiffs sought.

## ARTICLE VIII, SECTION 3

In their second claim for relief, plaintiffs contended that Article VIII, section 3, of the Oregon Constitution "implies that * * * schools must be adequate to educate the children they serve." They maintain that Article VIII, section 3, requires the legislature to "appropriate funds sufficient to maintain an adequate system of K-12 public schools."

■ Plaintiffs first argue that Article VIII, section 3, incorporates the quality goals established by the legislature under Article VIII, section 8. We reject that argument. Article VIII, section 8, requires funding to meet the quality goals established by law, but it also includes a reporting requirement. As we have explained, that reporting requirement expressly contemplates that funding may not be sufficient to meet the quality goals. Under plaintiffs' argument, Article VIII, section 3, would prohibit insufficient funding to meet the goals established under Article VIII, section 8, regardless of the reporting requirement. The voters enacted the whole of Article VIII, section 8; they cannot have expected or intended that the preexisting Article VIII, section 3, would immediately render the reporting requirement a nullity.

■ Alternatively, plaintiffs suggest that Article VIII, section 3, includes its own separate requirement of funding to maintain an adequate system of public schools. On review, plaintiffs point to the failure of the legislature to fund the quality goals under Article VIII, section 8, as evidence that the legislature did not adequately fund the schools under Article VIII, section 3. We turn to that question.

■ Article VIII, section 3, was adopted as part of the original Oregon Constitution of 1857. Our methodology for interpreting original constitutional provisions is somewhat different from that used to analyze constitutional amendments adopted by initiative petition or legislative referral. *See*

*Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 56-57, 11 P3d 228 (2000) (noting difference). For original provisions, we seek " 'to ascertain and give effect to the intent of the framers [of the provision at issue] and of the people who adopted it.' " *Id.* at 54 (quoting *Jones v. Hoss*, 132 Or 175, 178, 285 P 205 (1930) (alteration in *Stranahan*)). In analyzing an original constitutional provision, we consider "[i]ts specific wording, the case law surrounding it, and the historical circumstances that led to its creation." *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992).

We begin with the wording of Article VIII, section 3. The text provides:

> "The Legislative Assembly shall provide by law for the establishment of a uniform, and general system of Common schools."

As can be seen, Article VIII, section 3, does not use the word "adequate." Article VIII, section 3, requires "[c]ommon schools" in a "system" that is "uniform" and "general."[7]

"Common schools" was a synonym for public or free schools, as attested by a variety of sources roughly contemporaneous with the framing of the Oregon Constitution in 1857. *See, e.g.*, Alexander M. Burrill, 1 *Law Dictionary and Glossary* 328 (2d ed 1867) (noting that "common schools" are "[o]therwise termed *public* schools, and *free* schools"); James Kent, 2 *Commentaries on American Law* *196-202 (3d ed 1836) (using the terms "common schools" and "public schools" interchangeably); *Jenkins v. Andover*, 103 Mass 94, 98 (1869) ("The words 'public schools' are synonymous with 'common schools,' in the broadest sense * * *."); *Powell et al. v. Board of Education*, 97 Ill 375, 379 (1881) (noting that "the legislature, from its earliest action on the subject of schools, seems to have used the words 'free schools,' and 'common schools,' interchangeably"); *School Dist. No. 20 v. Bryan*, 51 Wash 498,

---

[7] The applicable contemporaneous definition of the adjective "uniform" was "[o]f the same form with others; consonant; agreeing with each other; conforming to one rule or mode." Noah Webster, 2 *An American Dictionary of the English Language* (1828). The applicable contemporaneous definition of the adjective "general" was "[h]aving a relation to all; common to the whole." Noah Webster, 1 *An American Dictionary of the English Language* (1828). Neither term establishes any educational standards.

504, 99 P 28, 30 (1909) ("[A] common school, within the meaning of our Constitution, is one that is common to all children of proper age and capacity, free, and subject to, and under the control of, the qualified voters of the school district.").

The term "common school" also had implications beyond the fact that the school did not charge tuition; it carried with it the connotation of a basic education. However, any meaning beyond that of a basic education was subject to dispute. Some authorities suggested that a "common school" meant only elementary school education. *E.g.*, Charles Abner Howard, *A History of High School Legislation in Oregon to 1910*, 24 Or Hist Q 201, 208 n 15 (1923) (" 'Common school' as used by the laity, means the grades below those ordinarily included in high school."); Burrill, 1 *Law Dictionary* at 328 (defining "common schools" as "[s]chools for the elementary instruction of children of all classes; schools for general elementary education").

Most courts of the era, however, rejected the idea that the term "common school" was limited to an elementary school education, although they did not identify the exact nature of the education that might be provided above that basic level. In 1883, the Missouri Supreme Court stated:

> "The term 'common' when applied to schools, is used to denote that they are open and public to all, rather than to indicate the grade of the school or what may or may not be taught therein."

*Roach v. The Board of President and Directors of the St. Louis Public Schools*, 77 Mo 484, 485-88 (1883) (rejecting argument that common schools may lawfully teach only "the rudiments of an English education"). A few years earlier, the Illinois Supreme Court had noted that there was no agreement as to what the common school curriculum should include:

> "The phrase, 'a common school education' is one not easily defined. One might say that a student instructed in reading, writing, geography, English grammar and arithmetic had received a common school education, while another who had more enlarged notions on the subject might insist that history, natural philosophy and algebra should be included. It would thus be almost impossible to find two

persons who would in all respects agree in regard to what constituted a common school education."

*Richards v. Raymond*, 92 Ill 612, 617 (1879) (rejecting argument that high school was not common school). In 1881, the Illinois Supreme Court stated:

"Without being able to give any accurate definition of a 'common school,' it is safe to say the common understanding is, it is a school that begins with the rudimental elements of an education, whatever else it may embrace, as contradistinguished from academies or universities devoted exclusively to teaching advanced pupils in the classics, and in all the higher branches of study usually included in the curriculum of the colleges."

*Powell*, 97 Ill at 378 (rejecting argument that teaching of German language constituted misappropriation of common school funds). *See also Jenkins*, 103 Mass at 97 (" 'Public schools,' as those words are used in the Constitution and laws of Massachusetts, are not limited to schools of the lowest grade.").

The wording of Article VIII, section 3, thus indicates that the term "common school" means public or free school. The term also carries with it the idea of a basic or minimally adequate education. However, the wording of Article VIII, section 3, does not carry with it specific educational standards beyond a basic education.

As noted, when interpreting an original constitutional provision we also examine our prior case law. Plaintiffs contend that *Olsen* held that Article VIII, section 3, contains an adequate funding requirement. In that case, this court stated:

"We are of the opinion that Art VIII, § 3, is complied with if the state requires and provides for a minimum of educational opportunities in the district and permits the districts to exercise local control over what they desire, and can furnish, over the minimum."

*Id.* at 27. *Olsen*'s reference to "a minimum of educational opportunities" comports with what we have discerned from the wording of the provision.

Plaintiffs concede that no other decision by this court has addressed whether Article VIII, section 3, imposed educational standards. We have conducted an independent search, but we have not located any other such cases.

Plaintiffs do not address the history behind Article VIII, section 3. Nevertheless, we have reviewed the history of Article VIII, section 3, and we find nothing that would indicate that the framers associated any more specific meaning with the term "common school."[8]

We conclude that the wording of Article VIII, section 3, requires the legislature to establish free public schools that will provide a basic education. We agree that Article VIII, section 3, requires that the legislature provide a "minimum of educational opportunities." *Olsen,* 276 Or at 27. However, the legislature's failure to fund the public schools sufficient to meet the quality goals established by law does not demonstrate that the legislature has *ipso facto* failed to provide a minimum of educational opportunities. Moreover, plaintiffs' allegations that insufficient funding has produced a number of negative conditions in the public schools that they describe as "inadequate" are insufficient to claim that the public education system is no longer uniform. We conclude that the trial court correctly granted summary judgment to the state on plaintiffs' Article VIII, section 3, claim.

## CONCLUSION

In conclusion, we agree with plaintiffs that Article VIII, section 8, by its terms, directs the legislature to provide

---

[8] As originally introduced, Article VIII, section 3, appears to have been derived from the Wisconsin Constitution, Article X, § 3 (1848). *See* Claudia Burton, *A Legislative History of the Oregon Constitution of 1857—Part III (Mostly Miscellaneous: Articles VIII-XVIII)*, 40 Willamette L Rev 225, 236 n 50 (2004) (so attributing section 3); *but see The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857*, 477 (Charles Henry Carey, ed. 1926) (attributing section 3 to Iowa Constitution, Art IX, § 3 (1846)). The draft section provided:

"The Legislature may provide by law for the establishment of a uniform and general system of common schools which schools shall be free and without charge for tuition to all children between the ages of four & twenty years—and the instruction in such schools Shall be free from party or sectarian bias."

*Id.* at 250. The framers later changed "may" to "shall," and struck all of the draft text after the words "common schools." *Id.* at 251-52.

funding sufficient for the public schools to meet quality goals established by law. As we have explained, we conclude that the trial court should have entered a declaratory judgment on the limited ground that the legislature failed to fund the public school system at the level specified in Article VIII, section 8. We also conclude, however, that plaintiffs were not entitled to a broader declaratory judgment and that the court's judgment should declare that Article VIII, section 8, does not authorize the injunctive relief that plaintiffs sought. Finally, we also conclude that plaintiffs have not alleged any deficiencies in the funding for the public school system that place it below the standards that Article VIII, section 3, imposes.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for entry of a declaratory judgment consistent with this opinion and for a declaration that Article VIII, section 8, of the Oregon Constitution does not authorize the injunctive relief that plaintiffs sought.