IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ROD C. SWANSON                          )
and FAY J. STEIN,                       )
                                        )
           Plaintiffs,                  )      TC-MD 110108D
                                        )
    v.                                  )
                                        )
UNION COUNTY ASSESSOR,                  )
                                        )
           Defendant.                   )      **DECISION**

Plaintiffs appeal the real market value of residential property identified as

Account 9400 (subject property) for the 2007-08, 2008-09, 2009-10, and 2010-11 tax

years. A trial was held on October 25, 2011, via telephone at the Oregon Tax Court,

Salem, Oregon. Rod Swanson (Swanson) and Fay Stein (Stein) testified on behalf of

Plaintiffs. Linda Hill (Hill), Union County Assessor, testified on Defendant's behalf.

Plaintiffs' Exhibits 1 and 2 and Defendant's Exhibits A through D were received

without objection.

## I. STATEMENT OF FACTS

The subject property is a 1,782 square foot, residential home located on a 0.75

acre parcel. (Def's Ex A-1.) The subject property possesses three sheds, two decks, and

a driveway. (*Id.*) The subject property is located in a semi-remote rural area of Union

County, referred to as Telocaset, which is zoned as a rural residential community. (*Id.*)

The subject property is surrounded by specially-assessed farm land consisting of parcels

of range land that are primarily used for grazing. (*Id.*) Stein testified that Plaintiffs

purchased the subject property 28 years ago.

/ / /

In 2007, the Elkhorn Wind Farm was completed, consisting of 63 towers, of which several towers are located within one mile of the subject property. (*Id.*) Swanson testified that the wind turbines are as close as 1,500 feet to the subject property. Swanson testified that the video provided to the court by Plaintiffs accurately shows the subject property before and after the installation of the wind turbines. The video, Swanson stated, displays both the close proximity and the high number of wind turbines surrounding the subject property.

Stein testified that ever since the installation, Plaintiffs have experienced continuous negative physical symptoms as a result of the wind turbines. Stein testified that these symptoms have included headaches, insomnia, decreased concentration, and vertigo. Stein also testified that these symptoms abate when she leaves the subject property, a phenomenon Stein attributes to the lack of proximity to the wind turbines, which she considers to be the primary factor contributing to Plaintiffs' symptoms.

Plaintiffs submitted as evidence a book by Nina Pierpont, MD, PhD, titled "*Wind Turbine Syndrome: A Report on a Natural Experiment*" (Pierpont book). Plaintiffs highlighted pages 1-2, 12, 193-205, 239, 241, 252-55, 260-70, and 293-94 in the Pierpont book. Plaintiffs testified that the Pierpont book establishes the negative health effects upon people living in close proximity to wind turbines.

Swanson testified that he believed both the Pierpont book and the video to be self-explanatory of the situation. Stein testified that Plaintiffs also believe the wind turbines pose additional dangers beyond Plaintiffs' symptoms due to the oil stored in the wind turbine towers, which could potentially leak out and poison the local water supply. Stein testified that such leakage had occurred previously from the wind turbines.

The subject property's real market value on the tax roll as of the January 1, 2010, assessment date was $80,290. (Ptfs' Compl at 2.) Plaintiffs filed a petition to appeal the subject property's real market value to the Board of Property Tax Appeals (BOPTA), which on February 17, 2011, upheld the real market value of $80,290. (*Id.*) Plaintiffs timely appealed BOPTA's order. (Ptfs' Compl at 1.)

At trial, Plaintiffs requested a 2010-11 real market value of $0.00. Stein testified that the subject property has never been listed for sale since the installation of the wind turbines in 2007. Stein testified that while Plaintiffs were once offered $125,000 for the subject property 18 years ago, Plaintiffs would not even give the subject property away now. When asked why by Hill, Stein testified that Plaintiffs believe the property to have no value due to the dangers posed by the wind turbines and that they could not impose the current situation upon an innocent family. Stein testified that the Pierpont book shows that both children and the elderly suffer wind turbine syndrome to a greater degree than healthy adults and this precludes Plaintiffs from either selling or giving away the property.

Stein also testified that they contacted an independent assessor who offered to assess the subject property for free but later informed Plaintiffs that there was no precedent for which to evaluate the subject property. Swanson testified that this was because there is a "stigma" against admitting that "green energy" devalues properties. (*See* Ptfs' Compl at 4.)

At trial, Plaintiffs also requested a refund of property tax for the 2007-08, 2008-09, and 2009-10 tax years. Plaintiff also requested that all property tax be suspended for subsequent years after the 2010-11 tax year until "the surrounding wind turbines are

removed." Stein testified that the Tax Court should provide precedent and leave the message that county officials cannot accept "bribes from energy companies," "citizens matter" and "corrupt" counties and corporations should be "made to pay for their actions." Plaintiffs also stated that their requested refund and suspension of property tax would act as reimbursement for county actions they believe to be "criminal." (Ptfs' Compl at 4.)

Hill determined a real market value of $80,290 and requested that the roll value be sustained for the 2010-11 tax year. (Def's Answer at 1; Def's Ex A-1.) Hill testified that the subject property was last appraised in 2007, along with the entire southern portion of Union County. (*See* Def's Ex. A-1.) At that time, Hill testified, the exterior of the property was inspected by a county appraiser. (*See id.*) Hill stated that since 2007, the property has been subjected to value adjustments guided by Union County's annual ratio study. (*See id.*) Hill testified that on July 12, 2011, the property was viewed again from the road by Hill and Bart Dickison, Union County Chief Appraiser. (*See id.*) Hill testified that pictures were taken and submitted to the court. (*See* Def's Ex C-1, C-2.)

Hill testified that a market sales analysis was not prepared for the property due to the lack of sales in the surrounding area. (*See* Def's Ex A-1.) Hill testified that other areas in the county were not considered for comparable sales because of differences in regional influences and the fact that other areas were not close in proximity to a wind farm. (*See id.*) Hill testified that the Ernest Orlando Lawrence Berkeley National Laboratory report titled "*The Impact of Wind Power Projects on Residential Property*

///

///

*Values in the United States: A Multi-Site Hedonic Analysis,*" dated December 2009, on page 75, shows no evidence of a decline in property values for properties either within view or proximity to wind facilities. (Def's Exs A-1, A-2, D-75.)

Hill also testified that without any other objective market data suggesting that the subject property has suffered a loss in value, such as listing the property for sale, the roll value should be sustained. Swanson argued that it was common sense that even if Plaintiffs put their "home up for sale" on the open market, no one would purchase a home surrounded by wind farms when other alternatives existed.

Hill also requested that Plaintiffs' request for a property tax refund for tax years 2007-08, 2008-09, and 2009-2010 be dismissed. (Def's Answer at 1.)

## II. ANALYSIS

A.    *Tort Claims*

Plaintiffs testified that they believe the subject property's value to be $0.00 because of corruption and criminal acts conducted by county officials and by the nearby installation of the wind turbine farm that resulted in damage to their physical and mental health.

A tort is defined as "a wrongful act for which a civil action will lie except one involving a breach of contract * * * [.]" *Webster's Third New Int'l Dictionary* 2413 (unabridged ed 2002).

The Oregon Tax Court has jurisdiction over "all questions of law and fact arising under the tax laws of this state." ORS 305.410(1)[1]. However, as held by the Oregon Supreme Court: "[a] tort is not a tax matter simply because the tortfeasors are tax

---

[1] All references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OARs) are to 2009.

assessors.  Plaintiff's tax claims are unaffected by whether the assessors committed any torts.  Even if defendants maliciously harassed plaintiff, the assessment may be correct." *Sanok v. Grimes*, 294 Or 684, 697-98 n. 21, 662 P2d 693 (1983).  Furthermore, the Oregon Supreme Court observed that because all cases at the Tax Court are heard without a jury, "claims such as torts where there is a right to jury trial are not normally within the jurisdiction of the tax court."  *Id.* at 698 n. 21.

The Oregon Tax Court has also addressed efforts to litigate tort claims in the tax court.  In *Masse v. Dep't of Rev.,* 18 OTR 100, 107-08 (2004), the court dismissed a taxpayer's claim for compensatory and punitive damages for not arising out of tax law.  In *Masse*, the court held that facts giving rise to a tax claim are distinct from facts that give rise to a tort claim.  *Id.*

The Tax Court can only consider questions of law and fact arising under the tax laws of this state, which in the current case, involves the real market value of the subject property.  While taxpayers argue that these alleged acts have reduced the real market value of their property, these are actually alleged damages and do not address the question of whether or not the current real market value on the tax roll is correct.  Damages in claims stemming from the alleged malfeasance of public officials and the alleged ill health effects caused by nearby industry are questions of tort and not tax law.  These issues cannot be litigated in the Tax Court.

B.      *Authority of the Tax Court to Order Valuation Changes*

The Tax Court may only order valuation changes when the statutory requirements of ORS 305.288 are satisfied.  First, the Tax Court may only "order a change or correction applicable to a separate assessment of property to the assessment and tax roll

for the current tax year or for either of the two tax years immediately preceding the current tax year, or for any or all of those tax years ***." ORS 305.288(1). Second, the Tax Court may only issue a change in value for the property when it "is asserted in the request and determined by the Tax Court that the difference between the real market value of the property for the tax year and the real market value on the assessment and tax roll for the tax year is equal to or greater than 20 percent." ORS 305.288(1)(b). Third, the Tax Court may only order a change in value for the property if the "taxpayer has no statutory right of appeal remaining and the Tax Court determines that good and sufficient cause exists for the failure by the assessor or taxpayer to pursue the statutory right of appeal." ORS 305.288(3). "Good and sufficient cause" is defined by ORS 305.288(5)(b) as:

(A) *** an extraordinary circumstance that is beyond the control of the taxpayer, or the taxpayer's agent or representative, and that causes the taxpayer, agent or representative to fail to pursue the statutory right of appeal; and
(B) Does not include inadvertence, oversight, lack of knowledge, hardship or reliance on misleading information provided by any person except an authorized tax official providing the relevant misleading information.

The current tax year is defined by ORS 306.115 as "the tax year in which the need for the change or correction is brought to the attention of the department."

Plaintiffs appealed the real market value of the subject property for the 2010-11 tax year and requested the refund of property taxes for the 2007-08, 2008-09 and 2009-10 tax years. Plaintiffs also requested that the court suspend all property taxes for all subsequent years after the 2010-11 tax year. The current tax year in question in this case is the 2010-11 tax year.

/ / /

First, this court lacks jurisdiction to consider either a change to the 2007-08 real market value or to issue a refund in property taxes. Because the 2007-08 tax year is more than two years prior to the current 2010-11 tax year, the court is statutorily barred from addressing this tax year.

Second, this court lacks jurisdiction to consider either a change to the 2008-09 or 2009-10 real market value or to issue a refund in property tax as a result. Even though Plaintiffs properly appealed the 2010-11 real market value to BOPTA and subsequently appealed BOPTA's order to the Tax Court, Plaintiffs did not follow this procedure for either the 2008-09 or 2009-10 tax years. If the taxpayers fail to pursue their statutory right of appeal, this court can consider whether there was "good or sufficient cause" for failure to do so, and if finding so, the court may allow Plaintiffs' claim. In this case, however, Plaintiffs made no argument as to why they failed to properly pursue their statutory right of appeal for the 2008-09 and 2009-10 tax years. Because there was no "good or sufficient cause" provided by Plaintiffs, and because Plaintiffs did not pursue their statutory right of appeal, this court may not order a change to the 2008-09 and 2009-10 real market values.

Third, this court has jurisdiction to consider a change to the 2010-11 real market value. As explained previously, Plaintiffs properly appealed the 2010-11 real market value to BOPTA and then to the Tax Court. Because the 2010-11 appeal satisfies the statutory requirements, the Tax Court may consider a change to the 2010-11 real market value.

/ / /

Fourth, this court does not have jurisdiction to consider a change to tax years following the 2010-11 tax year. The statutory language is clear; the court may only consider property tax appeals for either the current tax year, one of the previous two years, or any and all of those years if the statutory requirements are met. This court held that "[i]n requiring that taxpayers be 'aggrieved' under ORS 305.275, the legislature intended that the taxpayer have an immediate claim of wrong. It did not intend that taxpayers could require the expenditure of public resources to litigate issues that might never arise." *Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000). Furthermore, the Oregon Supreme Court has held that a court may only rule on issues involving "present facts as opposed to a dispute which is based on future events of a hypothetical issue." *Pendleton School Dist. 16R v. State of Oregon*, 345 Or 596, 604-05, 200 P3d 133 (2009) (citing *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982)). While Plaintiffs state that they want all future property taxes suspended "until" the wind turbines are removed, this court may not make findings of fact and issue rulings on the basis of hypothetical future events. Because of these reasons, this court does not have jurisdiction to consider changes to any tax years after the current tax year of 2010-11.

C.     *Real Market Value*

At issue in this case is the subject property's real market value for tax year 2010-11. Real market value is defined in ORS 308.205(a) as:

> "[T]he amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007(2). The legislature requires real market value to be determined in all cases by "methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). There are three methods of valuation that are used to determine real market value: 1) the cost approach, 2) the sales-comparison or comparable sales approach, and 3) the income approach. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). *See also* OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property). Because the subject property is a residence and not an income producing property, the income approach is inapplicable. Neither party considered the cost approach.

However, while Plaintiffs do not appear to have considered the comparable sales approach, Defendant considered, yet did not provide, a comparable sales approach to support Defendant's real market value. Hill testified that there were several reasons for not providing a comparable sales analysis. First, the county performed a reassessment of the subject property in 2007 and the subject property's real market value has been adjusted annually using the county's annual ratio study. Second, there were no comparable sales in the nearby area that could be included, particularly because no other sales were for properties located near wind turbines. Third, the subject property itself has not been offered for sale or exposed to the real estate market. Fourth, the County Assessor could not find any other sales data to indicate a loss of value for the subject property, and Hill testified that her conclusion is supported by the "*Impact of Wind Power Projects on Residential Property Values in the United States*" report.

As the party seeking affirmative relief, Plaintiffs bear the burden of proving that the subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)). Plaintiffs must also provide competent evidence of the real market value of their property, as criticism of the county's position is not sufficient to satisfy Plaintiffs' burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citing *King v. Dept. of Rev.*, 12 OTR 491 (1993)). Competent evidence can consist of arm's-length sales of property similar to the subject property in age, quality, size, and location in order to reach a correct real market value for the subject property. *Hausler v. Multnomah County Assessor,* TC-MD No 090237C at 2-3 (Dec 4, 2009).

Plaintiffs must present the greater weight of evidence to support their requested real market value reduction. Plaintiffs' evidence in support of their requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof ***." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiffs have failed to carry their burden of proof.

Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant provided sufficient information to support the subject property's real market value for the 2010-11 tax year.

/ / /

## III.  CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that the subject property's real market value as of the assessment date was the value on the tax roll.  Now, therefore,

IT IS THE DECISION OF THIS COURT that the 2010-11 real market value of property identified as Account 9400 was $80,290.

FURTHERMORE, IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of the subject property's real market value for tax years 2007-08, 2008-09, and 2009-10 claims is dismissed.

FURTHERMORE, IT IS THE DECISION OF THIS COURT that Plaintiffs' request that all future property taxes to be suspended is dismissed.

Dated this \_\_\_ day of January 2012.


JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on January 11, 2012.  The Court filed and entered this document on January 11, 2012.*